2000 ND 103

Joyce R. TISHMACK, now known
as Joyce Stern, Plaintiff and
Appellant,

v.

Gregory A. TISHMACK, Defendant
and Appellee.

No. 990287.

Supreme Court of North Dakota.

May 25, 2000.

Arnold V. Fleck, Fleck Law Office, Bismarck, ND, for plaintiff and appellant.

Mary E. Nordsven, Hardy, Maus & Nordsven, Dickinson, ND, for defendant and appellee.

KAPSNER, Justice.

[¶ 1] Joyce Tishmack [1] appealed from a trial court order denying her motion to move out of state with her son, Matthew. We hold the trial court did not clearly err in determining the requested move is not in Matthew's best interests. We therefore affirm.

I

[¶ 2] Joyce Tishmack and Gregory Tishmack are the parents of Matthew who was born on March 28, 1985. Joyce and Gregory divorced in 1986, and Joyce was awarded custody of Matthew subject to Gregory's right to reasonable visitation.

[¶ 3] In 1990, Gregory moved the trial court to amend its judgment to provide for specific visitation. Joyce responded, arguing Gregory had not shown a material change of circumstances affecting Matthew's best interests and Gregory had not requested a specific visitation schedule. The parties later agreed to a specific visitation schedule, and the divorce judgment was accordingly amended.

[¶ 4] In March 1996, Gregory moved for expanded visitation, the appointment of a guardian ad litem, and a psychological evaluation of Matthew. Gregory asserted Matthew experienced anxiety problems related to visitation. Joyce contested the motion, asserting Matthew did not have an anxiety problem and there had been no material change in circumstances justifying a change in visitation. The trial court

1. Joyce is now known as Joyce Stern.

ordered a psychological evaluation and appointed a guardian ad litem. In 1998, the trial court ordered the parties and Matthew to participate in counseling. The parties stipulated to a visitation schedule which was incorporated into an April 1998 order.

[¶ 5] Joyce sold her house in August 1998 and began renting a house. In July 1999, she moved the trial court for permission to move with Matthew to Bandera, Texas. Joyce asserted her position in Grant County as Clerk of Court and Register of Deeds was jeopardized by legislative plans to reduce clerk of court positions, she had been offered a higher paying job in Texas, she had family in Texas, and Matthew wanted to make the move. Matthew submitted an affidavit requesting the trial court allow the move. Opposing the request to move, Gregory contended Joyce intended to frustrate visitation and avoid dealing with Matthew's anxiety problem.

[¶ 6] After a hearing, the trial court acknowledged it was governed by the four-factor best interest analysis established in *Stout v. Stout*, 1997 ND 61, ¶ 34, 560 N.W.2d 903, and clarified in *Hawkinson v. Hawkinson*, 1999 ND 58, ¶ 9, 591 N.W.2d 144. The trial court determined: the first factor, the prospective advantages of the move, favors the move because of the anticipated economic gains; the second factor, the integrity of the custodial parent's motive for relocation, weighs strongly against the move because Joyce appears to intend to deter visitation and to avoid addressing Matthew's separation anxiety problem; the third factor, the integrity of the non-custodial parent's motives for opposing the move, weighs against the move because Gregory is genuinely concerned the move would destroy his relationship with Matthew; and the fourth factor, the potential negative impact, weighs against the move because, in light of Matthew's unresolved anxiety problem, an extended visitation plan would not work and the tenuous relationship which exists between Matthew and Gregory would be destroyed.

*See Stout,* at ¶ 34; *Hawkinson,* at ¶ 9. An order denying Joyce's motion was entered on July 30, 1999. Joyce appealed.

II

[¶ 7] Joyce contends the trial court erred in determining the move was not in Matthew's best interests. A custodial parent has the burden of proof to establish a proposed move is in the best interests of the child. *Hawkinson,* at ¶ 5. When determining whether the move is in the best interests of the child, the trial court must apply the following four-factor analysis:

1. The prospective advantages of the move in improving the custodial parent's and child's quality of life,

2. The integrity of the custodial parent's motive for relocation, considering whether it is to defeat or deter visitation by the noncustodial parent,

3. The integrity of the noncustodial parent's motives for opposing the move,

4. The potential negative impact on the relationship between the noncustodial parent and the child, including whether there is a realistic opportunity for visitation which can provide an adequate basis for preserving and fostering the noncustodial parent's relationship with the child if relocation is allowed, and the likelihood that each parent will comply with such alternate visitation.

*Id.* at ¶¶ 6, 9 (citing *Stout v. Stout,* 1997 ND 61, ¶ 34, 560 N.W.2d 903, and clarifying its fourth factor). The trial court's determination is a finding of fact and will not be reversed unless it is clearly erroneous. *Id.* at ¶ 5. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. *Tibor v. Tibor,* 1999 ND 150, ¶ 8, 598 N.W.2d 480. We do not reweigh evidence or reassess credibility where there is evidence to support a trial court's

findings. *Habeck v. MacDonald*, 520 N.W.2d 808, 813 (N.D.1994). "The trial court's choice between two permissible views of the weight of the evidence is not clearly erroneous." *Id.* (citation omitted). [¶ 8] In challenging the trial court's findings, Joyce asks this Court to reweigh the evidence. We decline and review only for clear error.

## A

■ [¶ 9] Considering the second *Stout* factor, the trial court found "[t]he history of the relationship between Joyce and Gregory and their continuing problems as shown by the evidence persuades the Court that Joyce is motivated more by an intention to defeat or deter Gregory's visitation than she is motivated by a sincere desire to improve herself economically or otherwise." Joyce argues the trial court gave insufficient weight to the evidence suggesting a motive to improve her situation and too much weight to evidence that put her motives in a different light.

[¶ 10] The trial court's finding the integrity of Joyce's motives for relocation weighs against the move is supported by the record. There is evidence suggesting Joyce was motivated by a desire to minimize and avoid dealing with Matthew's anxiety problem. Joyce admitted that after three or four counseling sessions, she "just took it for granted we were done." Joyce testified "in [ ] encouraging Matthew to stay [for visitation with Gregory, she has] suggested that his failure to do so could result in [his] having to go back to counseling." Joyce contended Matthew's "anxiety comes from there's nothing for him to do" while at Gregory's. In response to the question whether Matthew cannot spend more than one night per visit to Gregory's home, Joyce asserted "[i]t's because he doesn't want to. It's a totally different life style." Joyce testified she felt Matthew could handle traveling to North Dakota from Texas and staying for extended visitation periods.

[¶ 11] There is evidence showing Joyce was motivated by an intent to deter visitation. In support of his 1990 motion to amend the divorce judgment to provide for specific visitation, Gregory stated Joyce had refused to provide him with reasonable visitation. He stated Joyce would not allow overnight visitation and had sometimes allowed only two visits per month. Joyce contested Gregory's motion, arguing he had not shown a material change of circumstances since the divorce decree. Joyce denied she had refused overnight visitation but indicated she felt overnight visitation was not then in Matthew's best interests. She also stated she was "not sure if Greg is caring for Matthew properly when Matthew is with him." In response to Gregory's 1996 motion for expanded visitation, the appointment of a guardian ad litem, and a psychological evaluation of Matthew, Joyce asserted there had not been a material change in circumstances since the judgment had been amended. She opposed the appointment of a guardian ad litem and requiring Matthew to submit to a psychological evaluation, asserting he was a normal child. Joyce also indicated Gregory was controlling and manipulative and had frequently failed to follow their visitation arrangements. Although the parties eventually agreed to visitation schedules following both of Gregory's motions, the record shows the parties have had considerable conflict and visitation-related problems.

[¶ 12] Other evidence weakens Joyce's assertion her current job was in jeopardy and she sought employment in Texas "after [she] checked with Job Service [and] couldn't find anything around here." Joyce testified she began to look for employment in Texas in February or March of 1999 and "beg[a]n seriously pursuing a move to Texas" in about April 1999. However, eight of the eleven Job Service notices Joyce introduced were dated April 15, 1999, or later. Joyce conceded she was in no danger of losing her job until 2002, and was not sure if her position would be eliminated at that time.

[¶ 13] Finally, there is evidence Joyce concealed her plan to move. Despite "seriously pursuing" a move to Texas in April 1999, Joyce conceded she did not notify Gregory, until late June, of her intention to move to Texas. Joyce also admitted she put her home on the market and sold it in August 1998.

[¶ 14] Because there is evidence supporting the trial court's determination Joyce's motives for relocation weigh against allowing the move, we conclude the trial court did not clearly err in determining the second *Stout* factor weighs against the move.

## B

[¶ 15] Under the third *Stout* factor, the trial court indicated it "does not mean to imply that Gregory's motives are beyond all question, but [it] is convinced that Gregory is primarily motivated by a desire to preserve a relationship with Matthew and not simply to prevent Joyce from moving." Joyce asserts the trial court "gave far too little consideration to the evidence that indicates that Gregory is more interested in keeping Matthew in the state than he is in Matthew's best interest."

[¶ 16] The record supports the trial court's finding the integrity of Gregory's motives for opposing the move weighs against the move. There is evidence showing Gregory wants to have a strong relationship with Matthew and fears the move would prevent any significant relationship between them. Gregory indicated he wanted to have an influence in Matthew's life. Gregory expressed concern the move would severely limit visitation and harm his existing relationship with Matthew. He testified he did not request extended visitation in the past with Matthew because he did not want to increase Matthew's anxiety and "[i]t's impossible for Matt I know to even spend more than a night now and for him to travel 1400 miles alone I could never put him through that now." Tina Tishmack, Gregory's new wife, testified that in the past when Gregory requested Matthew stay for an extended visit, Matthew would become very anxious and Gregory would then attempt to console him.

[¶ 17] Because there is evidence supporting the trial court's determination, we hold the trial court did not clearly err in determining the third *Stout* factor weighs against allowing the move.

## C

[¶ 18] Under the fourth *Stout* factor, the trial court determined "[b]ecause of Matthew's anxiety problem the move to Texas would in all probability destroy the tenuous relationship which now exists between Gregory and Matthew." Joyce contends the trial court erred because "[t]he record evidence demonstrates that visitation can be restructured to preserve and foster Matthew's relationship with Gregory."

[¶ 19] The record supports the trial court's finding the potential negative impact on the relationship between Gregory and Matthew weighs against the move. There is evidence Matthew would have difficulty dealing with extended visitation. Both Gregory and Tina testified Matthew would become very emotional when faced with extended visitation. Matthew admitted extended visitation has been very difficult to deal with and he was not sure whether he would be able to handle extended visitation in the future. Other evidence, mainly Joyce and Gregory's past conflicts, indicates arranging visitation would be difficult if Joyce and Matthew moved to Texas. Although the parties eventually reached visitation agreements in the past, they did not do so until Gregory moved the trial court to act. Gregory has accused Joyce of refusing to allow him reasonable visitation. Joyce has accused Gregory of failing to follow visitation arrangements. She also has criticized Gregory's parenting and referred to him as "controlling and manipulative."

[¶ 20] Because there is evidence supporting the trial court's determination, we con-

clude the trial court did not clearly err in determining the fourth *Stout* factor weighs against allowing the move.

### D

[¶ 21] Joyce argues the trial court failed to consider Matthew's desire to make the requested move. A child's preference "is one factor the trial court may consider in determining the best interests of the child in the context of a motion to remove the child from the state." *Keller v. Keller*, 1998 ND 179, ¶ 18, 584 N.W.2d 509. The preference of a mature child is significant in determining the child's best interests. *Id.* at ¶¶ 17, 19 (noting the trial court, despite finding the child to be well-adjusted and an "A" student, "neither indicated it gave any consideration to [the child's] preference nor explained why it should discount or ignore it"); *see also* N.D.C.C. § 14–09–06.2(1)(i) (providing "[t]he reasonable preference of the child, if the court deems the child to be of sufficient intelligence, understanding, and experience to express a preference" must be considered in a custody determination).

[¶ 22] Although the trial court did not expressly recognize Matthew's preference, two factors compel a holding the trial court did not clearly err. First, the child's preference is relevant to the first *Stout* factor and the trial court indicated the first factor weighs in favor of allowing the move. *See Tibor v. Tibor*, 1999 ND 150, ¶ 18, 598 N.W.2d 480 (considering the child's prefer-ence when analyzing the first *Stout* factor). Second, there is evidence showing Matthew is not a mature child. Both Gregory and Tina testified Matthew becomes very anxious when faced with the possibility of extended visitation. Matthew testified coping with extended visitation has been very difficult and he is unsure whether he could handle it in the future. Matthew also admitted he has received some poor grades in school. The trial court accordingly found Matthew "appears somewhat immature for his age" and "may have difficulty adjusting to his new surroundings." We conclude the trial court did not clearly err in not expressly acknowledging Matthew's preference.

### III

[¶ 23] Because the trial court did not clearly err in determining the move is not in Matthew's best interests, we affirm the trial court's order.

[¶ 24] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, WILLIAM A. NEUMANN, JJ., concur.

DALE V. SANDSTROM, I concur in the result.