Filed 8/31/00 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2000 ND 165

Boyd Addy and Tom Hutchens, 

dba the M.A.H.D. Group, L.L.C., Plaintiffs and Appellants

v.

Guy Myers, Defendant

and 

Nancy Myers, individually and as 

part of M.A.H.D., L.L.C., Defendants and Appellees

No. 990387

Appeal from the District Court of Burleigh County, South Central Judicial District, the Honorable Thomas J. Schneider, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Richard B. Baer, P.C., 1120 College Drive Ste. 201, Bismarck, N.D. 58501, for plaintiffs and appellants.

Chad C. Nodland, P.C., P.O. Box 640, Bismarck, N.D. 58502-0640, for defendants and appellees.

Addy v. Myers

No. 990387

VandeWalle, Chief Justice.

[¶1] Boyd Addy and Tom Hutchens appealed from a judgment dismissing their action against Guy and Nancy Myers.  We hold the trial court did not clearly err in finding Nancy Myers did not intend to assume personal liability for the debt of the M.A.H.D. Group, L.L.C., a limited liability company.  We affirm.

I

[¶2] In June 1995, the M.A.H.D. Group was formed under N.D.C.C. ch. 10-32 to establish a restaurant in Bismarck named Ed Foo Yungs.  The named owners of  the M.A.H.D. Group were Tom Hutchens, Nancy Myers, Great Plains Marketing, Inc.,  and  R.M.C., P.C. Pension Fund.  Great Plains Marketing was owned by Lance and Lori Doerr and R.M.C., P.C. Pension Fund was an entity that invested Boyd Addy’s pension funds.  Each of the named owners of the M.A.H.D. Group contributed $32,500 and owned 25% of  the company.   Although they were not all  formally named in the M.A.H.D. Group organizational papers, the company informally consisted of four families:  Guy and Nancy Myers, Boyd and Deb Addy, Tom and Kathy Hutchens, and Lance and Lori Doerr.

[¶3] Ed Foo Yungs opened in February 1996 and in a short time began experiencing financial difficulties. The minutes of a May 15, 1996 meeting for the M.A.H.D. Group state “[i]t was agreed that a $30,000.00 line of credit be set up at BNC National Bank.”  According to Boyd Addy and Tom Hutchens, they personally signed for what they described as a $15,000 line of credit for Ed Foo Yungs in May 1996 and for another $15,000 line of credit in July 1996.   Boyd Addy and Tom Hutchens testified they loaned the $30,000 to the M.A.H.D. Group and it was to repay BNC National Bank with proceeds from the business.

[¶4] In November 1996, Ed Foo Yungs was still experiencing financial difficulties.  On November 7, 1996, Boyd Addy, Tom Hutchens, Lance and Lori Doerr, and Guy and Nancy Myers attended a company meeting at the Myers’ home.  According to Nancy Myers, she was told Ed Foo Yungs needed another $15,000 line of credit, the money would be borrowed by the M.A.H.D. Group, and it would repay the loan.  Her  written notes of the meeting reflect an “agreement - line of credit 15,000.”  Typed minutes of that meeting state the business “need[ed] $ for rent and to pay bills - $15,000.00 line of credit was agreed upon.”  On November 8, 1996, Boyd  Addy and Tom Hutchens personally signed for the $15,000 line of credit.

[¶5] Ed Foo Yungs continued to experience financial difficulties, and the minutes of a February 13, 1997 meeting state the owners decided to close the business on February 16, 1997.  The minutes of a March 26, 1997 meeting state “[i]t was agreed that the $45,000.00 due BNC National would be assumed equally by the Addys, Myers and Hutchens, to be assumed by the 15th of April.”  Boyd Addy testified Nancy Myers objected at that meeting to paying $15,000.  Guy and Nancy Myers subsequently retained an attorney, who wrote a letter to Lori Doerr requesting the minutes of the March 26 meeting be revised to  reflect the Myers had not agreed to assume any personal liability for the $15,000.

[¶6] Boyd Addy and Tom Hutchens sued Guy and Nancy Myers.  The trial court granted summary judgment for Guy Myers, concluding he was not personally obligated for the $15,000 loan because he was not listed as a capital contributer, an owner, a manager, a governor, or an officer of the company.  After a bench trial, the court decided Nancy Myers had not guaranteed repayment of the $15,000 loan because there was no written guaranty signed by her.  The court decided the $15,000 loan signed for by Boyd Addy and Tom Hutchens in November 1996 was for the M.A.H.D. Group; however, the company’s articles of organization specifically stated its members were not liable for its debt, obligation, or liability and Nancy Myers did not intend to assume any personal liability for the $15,000 loan.  The court refused to reinstate Guy Myers as a defendant because there was no showing he was a named owner of the M.A.H.D. Group, or had done anything to personally obligate himself to pay the $15,000 loan.

[¶7] Addy and Hutchens rely on the Articles of Organization and the Limited Liability Company Act for the authority of a majority of the owners to borrow money and incur liabilities.  
See
 N.D.C.C. §§ 10-32-23 (7) and 10-32-42.  However, when claiming Myers is responsible for the debt, the plaintiffs argue the “general rules of the L.L.C. were not followed.  It was a loosely run company.”  This case demonstrates the problems which arise when parties choose an artificial form of business organization but do not faithfully adhere to the statutory requirements of that form of organization and use its provisions only when it suits their purpose.

II

[¶8] Addy and Hutchens argue the trial court erred in dismissing their action on guaranty grounds.  Under N.D.C.C. § 22-01-01, a guaranty is a promise to answer for the debt, default, or miscarriage of another person.  Except when a guaranty is deemed an original obligation under N.D.C.C. § 22-01-05, a guaranty must be in writing and signed by the guarantor.  N.D.C.C. § 22-01-04.  To the extent there could be a guaranty under an argument that Nancy Myers guaranteed  repayment of  the loan by Addy and Hutchens to the M.A.H.D. Group, there is no written guaranty signed by her, and Addy and Hutchens have not argued for the application of the exceptions for an original obligation in N.D.C.C. § 22-01-04.

[¶9] Addy and Hutchens instead argue the $15,000 loan is not governed by guaranty law, because the M.A.H.D. Group had legal authority to conduct business and borrow money, and at the November 7, 1996 meeting, the company collectively agreed to the additional $15,000 loan and the Myers’ obligation to repay it.  Addy and Hutchens argue the Myers are personally liable for repayment of the $15,000 loan.

[¶10] The M.A.H.D. Group was established as a limited liability company under N.D.C.C. ch. 10-32, which was enacted in 1993 N.D. Sess. Laws. ch. 92.  A limited liability company combines the flow-through income tax advantages and capital structure of a partnership with the limited liability and governance structure of a corporation.  
See
 
Hearing on S.B. 2222 Before Senate Judicial Committee
, 53
rd
 N.D. Legis. Sess. (Jan 25, 1993) (prepared testimony of William L. Guy III and Jon Strinden).  
See generally
 Robert W. Wood, 
Limited Liability Companies, Formation, Operation, and Conversion
, §§ 1.3, 1.10 (1993).  Limited liability companies are taxed like partnerships, but are like corporations in that members have limited liability like corporate shareholders.  
See
 
Hearing on S.B. 2222
, 
supra
 (prepared testimony of William L. Guy III).  
See also
 Wood, 
Limited Liability Companies
, at § 1.3.  A limited liability company is a separate business entity and its owners or members are not exposed to personal liability for the entity’s debts unless there are personal guarantees.  
See
 
Hearing on S.B. 2222
, 
supra
 (prepared testimony of Jon Strinden).  Owners or members of a limited liability company can participate in management of the company without becoming personally liable for the entity’s debt.  
Id.

[¶11] Although a majority of members and owners of the M.A.H.D. Group could take action on its behalf to render it liable for its debt, 
see
 N.D.C.C. § 10-32-42, there is a difference between the company itself being liable for its debt and individual owners of the company being personally liable for its debt.  Under N.D.C.C. § 10-32-

29 and the articles of organization of the M.A.H.D. Group, owners and members of the limited liability company generally are not, merely because of that status, personally liable for a judgment, decree or order of a court, or in any other manner for a debt, obligation or liability of the company.  
See
 
Water, Waste & Land, Inc. v. Lanham
, 955 P.2d 997, 1001-04 (Colo. 1998) (holding owner of limited liability company may be personally liable to third party if owner acts as agent for company and fails to disclose existence and identity of principal).

[¶12] Moreover, the operating agreement for the M.A.H.D. Group provided a remedy for a member refusing to make additional capital contributions by permitting the member to refuse to contribute any or all of the member’s share of additional capital and incur a proportionate decrease in ownership in the company:

The owners may contribute in proportionate amounts any additional capital deemed necessary for the operation of the Company, provided, however, that in the event that any member deems it advisable to refuse or fails to contribute his share of any or all of the additional capital, then the other members or any one of them may contribute the additional  capital not paid in by such refusing member and shall receive therefore an increase in the proportionate share of the ownership or interest in   the entire company in direct proportion to the said additional capital contributed.  Unless otherwise agreed, the right to make up additional capital contributions of a refusing member shall be available in the same order as the right to purchase in the case of withdrawal or death of a member, as set forth in Paragraphs XV and XVI.

[¶13] Here, to the extent the $15,000 loan in November 1996 could be viewed as a capital contribution by the members or owners of the M.A.H.D Group, the members or owners are limited by the remedy provided in the operating agreement.  To the extent the additional $15,000 loan constituted debt for the company, the owners or members of the company are not, merely because of that status, personally liable for the company debt under N.D.C.C. § 10-32-29 and the company’s articles of organization.

[¶14] Addy and Hutchens nevertheless assert the members waived those personal liability provisions when Nancy Myers agreed to repay the loan.  Addy and Hutchens argue the parties entered a separate oral contract for her to personally repay the $15,000 loan.  Addy and Hutchens argue she is estopped from avoiding her obligation.

[¶15] The trial court found Nancy Myers did not intend or agree to assume any personal liability for the debt.  According to Boyd Addy, Nancy Myers objected at the March 26, 1997 meeting to paying $15,000.  According to Tom Hutchens, the final meetings of the company were a “little heated” and “voices were raised” during discussions about the company’s financial circumstances.  The minutes of the March 26, 1997 meeting reflect “[i]t was agreed that the $45,000.00 due BNC would be assumed equally by the Addys, Myers and Hutchens.”  The Myers subsequently retained an attorney, who wrote a letter to Lori Doerr requesting the minutes of that meeting be revised to reflect they had not agreed to assume personal liability for the $15,000 loan.  Although there is some evidence Nancy Myers believed she might be personally liable for one fourth of the $15,000 loan, her belief was apparently based on her erroneous assumption that owners were personally liable for the debt of a limited liability company.  Nancy Myers’ mistaken belief does not constitute an agreement to be personally liable for any part of the $15,000 loan.  On this record, we are not left with a definite and firm conviction the trial court made a mistake in finding Nancy Myers did not intend or agree to assume any personal liability for the loan.  We therefore conclude the trial court’s finding is not clearly erroneous under N.D.R.Civ.P. 52(a).

III

[¶16] Addy and Hutchens argue the trial court erred in dismissing Guy Myers as a defendant because he was an active participant in the group.  The trial court dismissed Guy Myers because Addy and Hutchens did not show he was a named owner of the M.A.H.D. Group or show he had done anything to personally obligate himself to pay the $15,000 loan.  Although Guy Myers may have been an agent for a disclosed principal, Nancy Myers, he was not a named owner or manager of the M.A.H.D. Group and nothing in this record establishes, as an agent for his wife, he was personally liable to Addy and Hutchens for the $15,000 loan.

IV

[¶17] We affirm the judgment.

[¶18] Gerald W. VandeWalle, C.J.

Carol Ronning Kapsner

Mary Muehlen Maring

William A. Neumann

[¶19] The Honorable Gerald G. Glaser, S.J., sitting in place of Sandstrom, J., disqualified.

Glaser, Surrogate Judge, Dissenting.

[¶20] I concur with most of what is said in the opinion.  Nevertheless, analysis of the undisputed facts leads me to a different conclusion.  There is no dispute that a line of credit was given to the plaintiffs Addy and Hutchens and not to the corporation.  The Plaintiffs’ exhibit 7, which is the note they signed, demonstrates this.  The corporation was never and is not now indebted to the bank for the funds discussed in the opinion.  Addy and Hutchens were.  They indebted themselves to the bank personally because the corporation could not at that time obtain a line of credit on its own, being a new business.  Addy, Hutchens and separately the Doerrs made available to the business the funds to provide working capital with the hope that the business would later repay them out of  hoped for profits.  The business used the bank loans and made some payments toward interest but not on principal.  There were no guarantees or contributions to capital from or to anyone at this point.  The business did owe $15,000.00 each to Boyd, Hutchens and Doerrs.

[¶21] In due time, the business exhausted these cash infusions and at the much discussed meeting of 11-7-1996 the necessity of obtaining an additional $15,000.00 was again considered.  The plaintiff’s claim is that it was clearly understood by all parties that “the Myers” would obtain the needed $15,000.00 from the bank by signing a note to the bank for that amount which would then be made available to the business as the previous loans had been.  Doing so would equalize each party’s exposure to indebtedness at $15,000.00 or one quarter each of the total indebtedness.  There is evidence in the record the Myers explicitly agreed to this or at least didn’t object.  The loan was made the next day but only Addy and Hutchens signed the note.  Mrs. Myers was not present and there is no clear evidence why she was absent.  None of the foregoing suggests the existence of a guarantee on the part of anyone.

[¶22] The trial court in its opinion did not find that Nancy Myers did not intend or agree to assume any personal liability for the loan.  It stated:

The main issue in this case is whether or not Nancy Myers guaranteed repayment on the $15,000.00 loan. (See plaintiffs Exhibit 7.)

[¶23] The trial Court stated that such a guarantee must be in writing and signed by the guarantor.  It wasn’t, of course, because it didn’t exist.  Later, in its opinion the trial court does state that:

Defendants Exhibit 4 also show quite plainly that Nancy Myers did not intend to assume any personal liability for the $15,000.00 loan at BNC Bank.

[¶24] The only reference to this subject in the minutes which were kept by Mrs. Myers (Exhibit 4) is:

Need for rent and to pay bills - $15,000.00 line of credit was agreed upon.

[¶25] This minute neither “clearly” exonerates or implicates Ms. Myers.  If anything, it demonstrates the subject was discussed.  Ms. Myers did later object to the assertion that she was responsible for that last loan but this did not occur until March 26, 1997.

[¶26] I would remand to the trial court with directions to determine whether the plaintiffs have established by the greater weight of the evidence that Mrs. Myers did orally agree with the co-owners that she would be the principal obligor on the last loan obtained from the bank and, if so, was she agreeing to be responsible for one fourth of the entire debt (one fourth of $60,000.00) or for one fourth of the last loan ($3,750.00).

[¶27] The trial court declined to consider statements made by Mr. Myers as hearsay.  From the nature of the questions, it appears the statements were offered to establish they were made.  Their accuracy was not in issue.  In any event, statements made by Mr. Myers, the agent and alter ego of Mrs. Myers, are admissible against her.

[¶28] Gerald G. Glaser, S.J.