2001 ND 88

Shirley J. FOX, Plaintiff and Appellee,

v.

Abe L. FOX, Defendant and Appellant.

No. 20000231.

Supreme Court of North Dakota.

May 4, 2001.

Rehearing Denied May 24, 2001.

Patricia E. Garrity, Bair, Bair, Garrity & Kelsch, LLP, Mandan, for plaintiff and appellee.

Orell D. Schmitz, Schmitz, Moench & Schmidt, Bismarck, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Abe L. Fox appealed the amended judgment on remand from *Fox v. Fox*, 1999 ND 68, 592 N.W.2d 541 (*"Fox I "*). In the current appeal, Abe Fox claims the district court erred when it established the

value of an irrevocable life insurance trust and the award of spousal support. We affirm.

## I

[¶ 2]   The facts of this case are set forth in *Fox I*, 1999 ND 68, 592 N.W.2d 541. In the original divorce action, the trial court did not assign a value to an irrevocable life insurance trust, nor did it include the trust in the marital property, because the trial court claimed it did not have competent evidence to serve as a basis for a meaningful valuation of the trust. On appeal, this Court recognized there are various contingencies involved in Shirley Fox actually receiving income from the trust, but that some of the contingencies were in her control. *Id.* at ¶ 15. Also, there was evidence presented at the original divorce trial on the value of the trust. *Id.* at ¶ 13. Abe Fox originally argued the trust should be valued at the present cash value of the life insurance policies that made up the corpus of the trust, a value of $290,000. *Id.* It is uncontested the only corpus in the trust are the life insurance policies on Abe Fox's life. Shirley Fox contended no value should be placed on the trust, but in the alternative, if it were given value it should be based on her accountant's testimony valuing the trust at $50,000. *Id.* This Court reversed the original divorce action and remanded it to the trial court to place an appropriate value on Shirley Fox's interest in the trust for inclusion in the marital estate. *Id.* at ¶ 15.

[¶ 3]   At the hearing after remand both Abe Fox and Shirley Fox presented expert testimony on the valuation of the irrevocable life insurance trust. Shirley Fox called Dr. A. Frank Thompson. Dr. Thompson holds masters degrees in actuarial science, quantitative analysis, and economic analysis and monetary theory. Dr. Thompson's doctoral degree is in economics and actuarial science.

[¶ 4]   Dr. Thompson based his valuation on the value of Shirley's interest in the trust according to his interpretation of the trust language. According to Dr. Thompson, while Abe Fox is alive, the trust pays Shirley Fox only the income generated by the trust. After Abe Fox's death, Shirley Fox can withdraw a portion of the principal per year. This annual withdrawal is limited to $5,000 or five percent of the principal, whichever is greater.

[¶ 5]   Currently, because the only corpus in the trust are the life insurance policies on Abe Fox's life, the trust generates no income. Dr. Thompson's valuation began with a proposed surrender of the life insurance policies for their present cash values of $303,830 to $331,190 to provide a corpus for the trust. Then, in compliance with the limitations of the trust, the trust would pay Shirley Fox only the income generated by the trust, assuming an interest rate of 6.75 percent, during Abe Fox's life. After Abe Fox's death, the trust would pay Shirley the trust income plus the greater of $5,000 or five percent of the principal per year. Adhering to limitations in the trust, Dr. Thompson generated a range of financial and actuarial analytical scenarios of the present value of the potential benefits Shirley Fox could obtain from the trust. The differing scenarios varied the time of Abe Fox's death from shortly after the surrender of the policies to eight years later. Each scenario calculated the actuarial present value of potential income to Shirley Fox to age ninety-five, with adjustments for survival possibilities based on the 1957 female life expectancy table. Dr. Thompson's six different present values of the trust based on these scenarios ranged from $253,986 to $291,614.

[¶ 6]   Abe Fox presented Mr. Vanderscoff, an actuary and reinsurance broker with masters degrees in business administration and financial services.   Mr. Vanderscoff determined the cash value of the life insurance policies was $353,617 and the death benefit of the policies was $880,916.   Mr. Vanderscoff based his valuation of the trust on assumed life expectancies of Abe Fox ranging from five years to ten years, inflation rates ranging from two percent to four percent, and a 3.19 percent annual increase in the death benefit of the policies.   The result was a range of values of the trust based on the full death benefits, adjusted to present value of those amounts.   Mr. Vanderscoff's values ranged from $814,662 to $989,256.   Mr. Vanderscoff testified these were values of the trust, not values specifically as it relates to Shirley Fox as a beneficiary of the trust.

[¶ 7]   Mr. Vanderscoff also provided the trial court with a scenario based on the assumption Shirley Fox could borrow $60,000 a year from the cash value of the life insurance policies for ten years.   Mr. Vanderscoff also assumed if Shirley Fox would not start to borrow from the policies until Abe Fox is 66 years old, she could borrow $60,000 a year, and at the end of ten years, there would still be a death benefit remaining in the policies.   Therefore, if Abe died in ten years, the death benefit would be available to the trust to repay the amount loaned from the life insurance policies plus an additional amount to remain in the trust.   According to Mr. Vanderscoff's interpretation, the trust gives the trustee broad discretionary powers both before and after Abe Fox's death, which includes the discretion to loan $60,000 per year to Shirley Fox. Mr. Vanderscoff admits $60,000 is an arbitrary amount.   Mr. Vanderscoff interprets the trust to give the trustee a broad discretionary power as a general power not a specific power.

[¶ 8]   The trial court found both experts were qualified by education and experience to render an opinion as to the value of the trust.   Concerning Dr. Thompson's use of the 1957 life expectancy tables, the trial court recognized Dr. Thompson gave a reason for using that table, stating that was the table used when the insurance policies funding the trust were purchased.   However, the trial court concluded "[i]t would seem that current mortality tables should have been used."   Abe Fox submitted purported current mortality tables with his post-hearing brief.   Since they were not presented as evidence at trial, the trial court refused to consider the tables in its decision.

[¶ 9]   The trial court found Abe Fox's expert, Mr. Vanderscoff, based his valuation at least in part on Article 5 of the trust, which applies only after the death of Abe Fox, while Article 6 governs during Abe Fox's life.   Also, the trial court found Mr. Vanderscoff's interpretation of the trust allowing Shirley Fox to borrow from the life insurance policies did not appear to be an accurate interpretation of the trust.   Article 7, titled "Administrative Powers of the Trustee," grants general powers "except as elsewhere herein specifically restricted."   Article 7(a) covers the trustee's powers, duties and discretions with respect to investments and Article 7(b) covers trustee's powers, duties and discretions with respect to the life insurance policies in the trust.   The trial court found Article 7(b) has no provision for the trustee to borrow from the life insurance policies in the trust.

[¶ 10]   The trial court found Dr. Thompson's analysis was based on reasonable assumptions and was consistent with the terms of the trust.   Acknowledging there is no way to know how long Abe Fox will live, the trial court adopted the mid-

range valuation of $279,500. The property distribution was adjusted using this valuation for the trust, resulting in a distribution of $1,574,169 of assets to Shirley Fox and $1,548,654 to Abe Fox. The original decree distributed $2,032,093 to Abe Fox and $1,823,747 to Shirley Fox. The original property did not include a value for the trust, but did erroneously include the future value of Abe Fox's disability payments of $1,032,000. The trial court noted Shirley Fox now received more assets than Abe Fox; however, it explained in order to fully realize this amount of assets Shirley Fox would have to "cash in" the insurance policies in the trust.

[¶ 11] In the original divorce action the trial court also did not award Shirley Fox spousal support, finding she was adequately provided for by her share of the property. This Court in *Fox I*, concluded Shirley Fox clearly qualifies as a disadvantaged spouse and, in consideration of her needs and Abe Fox's needs and ability to pay, is a candidate for spousal support. *Fox I*, 1999 ND 68, ¶ 23, 592 N.W.2d 541. Because a disadvantaged spouse is not required to deplete her property distribution in order to live, the Court reversed and remanded, directing the trial court to reconsider Shirley Fox's request for cash spousal support. *Id.* at ¶ 24.

[¶ 12] At the hearing after remand, Shirley Fox presented evidence of monthly expenses of $4,700. Considering her actual expenses, the tax liability of twenty-four to twenty-eight percent for spousal support, and Abe Fox's monthly disability income of $17,200, Shirley Fox requested a monthly spousal support amount of $7,200. In his post-hearing brief, Abe Fox contended $5,000 per month was a reasonable amount for spousal support.

[¶ 13] The trial court ordered Abe Fox to pay $6,000 spousal support per month to Shirley Fox, until Abe Fox reaches age sixty-five. The trial court retained jurisdiction to consider what, if any, spousal support Abe Fox should pay upon reaching sixty-five years of age.

## II

[¶ 14] A trial court's findings of fact will not be set aside unless clearly erroneous. N.D.R.Civ.P. 52(a). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, although there is some evidence to support it, on the entire evidence there is a definite and firm conviction a mistake has been made. *Ruscheinsky v. Ulrich*, 2000 ND 133, ¶ 5, 612 N.W.2d 283. As we have frequently explained, the trial court's decisions in distributing marital property between the spouses are findings of fact reviewed on appeal under the standard stated in N.D.R.Civ.P. 52(a): "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *See Schwartz v. Schwartz*, 1997 ND 91, ¶ 4, 563 N.W.2d 391. A choice between two permissible views of the evidence is not clearly erroneous when the trial court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Hanson v. Williams County*, 452 N.W.2d 313, 315 (N.D.1990); *Stracka v. Peterson*, 377 N.W.2d 580, 582 (N.D.1985).

## III

[¶ 15] Abe Fox argues the trial court was clearly erroneous in its valuation of the trust. Claiming Dr. Thompson's valuation was a cash value, not a present

value, Abe Fox argues Mr. Vanderscoff's valuation is the only credible present-value evidence presented. Abe Fox misconstrues Dr. Thompson's valuation. Although Dr. Thompson does use cash values of $303,830 to $331,190 of the life insurance policy to originally fund the trust, his entire analysis is adjusted to present values to arrive at the values in the final column labeled "Actuarial Present Value," which range from $253,986 to $291,614. Dr. Thompson's trust valuations are present values of the trust.

[¶ 16] In contrast, it is Mr. Vanderscoff's valuation of $351,617 that is clearly a cash value of the life insurance policy, not adjusted to a present value of the trust in consideration of the terms of the trust. Also, the values of $814,662 to $989,256 represent the full death benefit amount of the life insurance policies of $880,916, discounted to a present value using varying inflation rates and life expectancies for Abe Fox, but not adjusted to a present value of the trust. Mr. Vanderscoff's valuation does not take into account the trust language limiting the distribution of the principal to Shirley Fox, nor does it adjust the estimates with respect to Shirley Fox's life expectancy. Shirley Fox's life expectancy is a factor in the valuation of the trust because the trust limits the distribution of the principal to Shirley Fox after Abe Fox's death to the greater of $5,000 or five percent of the principal per year.

[¶ 17] In *van Oosting v. van Oosting*, 521 N.W.2d 93, 97–98 (N.D.1994), this Court recognized it is difficult to assess the value of a trust, comparing it to the difficulties in valuing a pension. In both valuations there are contingencies involved. We held, like pensions and retirement plans, trusts may be divided at the time of divorce either by awarding the present value of the benefits or, when present valuation is too speculative, by awarding a percentage of future payments. *Id.* at 98. In the previous pension cases, because of the speculative nature, courts opted to award a percentage of future payments instead of dividing the present value. *Id.; Zuger v. Zuger*, 1997 ND 97, ¶ 13, 563 N.W.2d 804.

[¶ 18] Because of the terms of this trust, it is not possible to divide it by awarding each spouse a percentage of future payments. Therefore, the trial court must base its property division on an estimate of the present value of the trust. Although we have directed trial courts to divide assets on the basis of present value of pensions and trusts, we have not specifically stated how to determine the present value of an irrevocable life insurance trust. Courts in other states have ruled, for purposes of the division of property upon divorce, life insurance policies are to be valued at their cash surrender values not the amount of the death benefit. *Wisner v. Wisner*, 129 Ariz. 333, 631 P.2d 115, 120 (Ariz.App. 1981); *In Re Marriage of Lorenz*, 146 Cal.App.3d 464, 194 Cal.Rptr. 237, 239 (1983); *In re Marriage of Ryman*, 172 Ill.App.3d 599, 122 Ill.Dec. 646, 527 N.E.2d 18, 23 (1988); *Grost v. Grost*, 561 S.W.2d 223, 230 (Tex.Civ.App.1977).

[¶ 19] The court's choice between two permissible views of the weight of the evidence is not clearly erroneous. *Tishmack v. Tishmack*, 2000 ND 103, ¶ 7, 611 N.W.2d 204. As we explained in *Wald v. Wald*, 556 N.W.2d 291, 295 (N.D.1996), "[m]arital property valuations within the range of the evidence are not clearly erroneous." Dr. Thompson's valuations are based on acceptable present values of the trust.

[¶ 20] Abe Fox also contends the trial court erred because it did not value the trust as of the date of the remand hearing, May 11, 2000. The other values used in the property distribution were the values

as of the original trial date. It was not clear error to value the trust as of the original trial date. *See Zuger v. Zuger,* 1997 ND 97, ¶ 10, 563 N.W.2d 804; *Grinaker v. Grinaker,* 553 N.W.2d 204, 208–09 (N.D.1996).

[¶ 21] Abe Fox contends the trial court erred in its valuation of the trust because Dr. Thompson used a 1957 female mortality table in his actuarial analysis. The trial court did not consider the alternative table presented by Abe Fox in his post-trial brief because it was not presented as evidence at trial. The trial court could have taken judicial notice of a newer mortality table as provided by N.D.C.C. § 31–08–05; however, Abe Fox conceded at oral argument that he did not request the court to do so at trial. Abe Fox's expert, Mr. Vanderscoff, testified a current mortality table would reflect an increased life expectancy of Shirley Fox; however, he did not refute Dr. Thompson's stated reasons for using the table he used, nor did he provide the court with an opinion on how much an increased life expectancy would change the value of the trust. Rather, Mr. Vanderscoff testified Dr. Thompson's method was technically correct. Mr. Vanderscoff testified, the real distinction between the two valuations was the interpretation of what the trustee could pay Shirley Fox rather than how much the trustee is obligated to pay her. Mr. Vanderscoff did not disclose a source for the life expectancies for Abe Fox of five and ten years he used in his valuation.

■ [¶ 22] A court's valuation of marital property is dependent upon the evidence presented by the parties. *See Anderson v. Anderson,* 504 N.W.2d 569, 571 (N.D.1993) (holding no reversible error where trial court had to choose between husband's incredible testimony as to value and wife's questionable method of determining value of husband's retirement). As

we stated in *Anderson v. A.P.I. Co. of Minnesota,* 1997 ND 6, ¶ 25, 559 N.W.2d 204, judges, whether trial or appellate, are not ferrets, obligated to engage in unassisted searches of the record for evidence to support a litigant's position. As we noted above, the trial court's choice between two permissible views of the weight of the evidence is not clearly erroneous. *Tishmack,* 2000 ND 103, ¶ 7, 611 N.W.2d 204. We conclude the trial court's valuation of the trust is not clearly erroneous.

IV

■ [¶ 23] Abe Fox argues spousal support of $6,000 per month is clearly erroneous. Assuming an interest income of $2,000 plus $5,000 per month in loans from the life insurance trust, Abe Fox projects a monthly income to Shirley Fox of $13,000. Abe Fox then states he "should not be required to put Shirley in a position where she can generate that kind of monthly income." The trial court found the trust did not permit Shirley Fox to borrow against the life insurance death benefit amount.

■ [¶ 24] This Court has adopted the equitable doctrine for spousal support, rejecting the minimalist doctrine. *Moilan v. Moilan,* 1999 ND 103, ¶ 15, 598 N.W.2d 81. The "minimalist doctrine" has as its objective to educate and retrain the recipient for minimal self-sufficiency. Marcia O'Kelly, *Entitlements to Spousal Support After Divorce,* 61 N.D.L.Rev. 225, 242 (1985). The "equitable doctrine" tries to enable the disadvantaged spouse to obtain "adequate" self-support after considering the standard of living established during the marriage, the duration of the marriage, the parties' earning capacities, the value of the property and other Ruff Fischer factors. *Id.* at 244–55. As we held in *Fox I,* 1999 ND 68, ¶ 23, 592 N.W.2d 541, Shirley Fox presented a com-

pelling case for spousal support. Shirley Fox and Abe Fox were married for 32 years, years during which Shirley Fox has foregone opportunities and has contributed during the marriage to the supporting spouse's increased earning capacity. *Id.* Permanent support is appropriate when the economically disadvantaged spouse cannot be equitably rehabilitated to make up for the opportunities and development she lost during the course of the marriage. *Riehl v. Riehl,* 1999 ND 107, ¶ 11, 595 N.W.2d 10. As explained by Justice Levine in her concurrence in *Wiege v. Wiege,* 518 N.W.2d 708, 712 (N.D.1994):

> That mutual decision is of benefit to both partners during the life of the marriage but dissolution of the marriage is a different story. Permanent support is the price to be paid for the earlier mutual decision about the role to be played by each marital partner when, in fact, the economically disadvantaged partner cannot obtain, after training and reasonable time, the income necessary to live a life comparable to the one prior to divorce or comparable to the higher earner's post-divorce reduced standard of living. (Citations omitted.)

Considering Shirley Fox's expenses and Abe Fox's ability to pay, a spousal support amount of $6,000 is not clearly erroneous.

[¶ 25] We affirm the amended judgment of the district court.

[¶ 26] SANDSTROM, NEUMANN, and MARING, JJ., and HODNY, S.J., concur.

[¶ 27] WILLIAM F. HODNY, S.J., sitting in place of KAPSNER, J., disqualified.