2001 ND 95

Carol Kay MOEN and LaRae A. Thomas, Co–Trustees of the Jay V. Thomas Family Trust, Plaintiffs and Appellees

v.

Laurie THOMAS, individually and as surviving spouse, heir and personal representative of Jerry J. Thomas, deceased, and his estate, and Kisten Thomas and Tessa Thomas, their minor children, by Laurie Thomas, their guardian, Defendants, Third–Party Plaintiffs and Appellants

v.

Fred C. Rathert and Neff Cresap Rathert Eiken & Irigoin, P.C., Third–Party Defendants.

No. 20000169.

Supreme Court of North Dakota.

May 22, 2001.

John H. MacMaster, MacMaster Law Firm, Ltd., Williston, for plaintiffs and appellees.

Greg W. Hennessy, Hennessy Law Office, P.C., Williston, for defendants, third-party plaintiffs and appellants.

NEUMANN, Justice.

[¶ 1] Laurie Thomas, Kisten Thomas, and Tessa Thomas have appealed from a judgment which quieted title in certain property in the Jay V. Thomas Family Trust, ordered the trust was entitled to exclusive possession of the property, and awarded damages for the use and occupation of the property. We conclude the trial court did not err in admitting testimony of an oral year-to-year lease and in finding the parties had a year-to-year lease which could be terminated at the end of a yearly term by the trustees. We therefore affirm the judgment.

I

[¶ 2] Laurie was married to Jerry Thomas and they had two daughters, Kisten and Tessa. Jerry's father, Jay, owned a ranch in Williams County. During the marriage, Jerry and Laurie lived on the Thomas family ranch and worked the ranch with Jay.

[¶ 3] Jay died on October 19, 1995. Under the terms of Jay's will, Jerry received the surface of the ranch headquarters and some additional ranch land. Under Article VII of the will, Jerry also received an option to purchase or lease other ranch land:

I give, devise and bequeath to my son, Jerry Jay Thomas, first option to buy at written estate appraised value all machinery and livestock owned by me at the time of my death, together with the first option on the surface of all rural real estate not otherwise disposed of in this will which is owned by me at such appraised value[.] [A]ll oil, gas and other minerals that I might own under the property sold shall be excepted and reserved to be distributed as hereinafter provided. This option shall include the right to purchase on a contract for deed over a seven year period and the right to use as a down payment on such contract the share received by Jerry Jay Thomas from the non-real estate property distributed to him under this will. I have checked the land values in the area including prices paid for land in recent years. The cropland which will be sold to my son Jerry on a contract for deed is highly erosive and susceptible to blowing. The pasture land is rough and sandy. It is my opinion that the sum of $70.00 per acre average for the cultivated and pasture land is a fair sum. I direct that this be the purchase price in the contract for deed. The contract shall bear interest at 6% per annum on unpaid balances. In the event that this option is not exercised within 180 days after my death, the property shall be sold at a public auction and proceeds distributed equally to my six children and my wife. All cattle and unpaid machinery balances and any balance due on the contract for deed executed pursuant to this article and any cattle owned at the time of my death not otherwise provided for and all unpaid balance on a contract for the sale of machinery to my son Jerry previously executed shall be distributed equally share and share alike to my wife and children, including my son, Jerry. It is my further desire that in the event that my son Jerry not exercise the option to purchase, that my personal representative lease the land reference [sic] in this article to him at a rental of $3.00 per acre. The lease to be for seven years and to contain an option to purchase the real estate described in this article or [sic] a contract over a fifteen (15) year period; the option shall be exercisable during such sever [sic] year lease term, sale price to be market value reduced by actual rental paid, interest to be Bank of North Dakota base rate minus 1 percent.

[¶ 4] The will was admitted to probate in November 1995, and Jay's daughter, Donna Sneva, was appointed personal representative. Jerry exercised his option under the will to purchase the machinery and livestock from the estate, but advised the other heirs at a December 1995 family meeting that he was declining the first option to purchase the land. Jerry orally stated, however, that he intended to exercise his right to lease the property. In late 1995 Jerry tendered, and the personal representative accepted, rent for 1996 at $3.00 per acre.[1]

[¶ 5] The family ultimately decided to place the property in trust to administer the surface and mineral interests of the estate. Attorney Fred Rathert, who had drafted Jay's will and represented the personal representative in probating the estate, drafted the trust agreement which was signed by the family members, including Jerry, on December 3, 1996. Article Three of the trust agreement provided:

The Settlors have transferred to this Trust real property consisting of farm and ranch lands located in Truax Township, Williams County, North Dakota. This property is now leased to Jerry J. Thomas, one of the Settlors. Jerry J. Thomas shall have the right and option to lease the property for agricultural purposes as provided in the Last Will and Testament of Jay V. Thomas, subject however to the rights of the other Settlors to enter and use the property for hiking, hunting or other limited recreational purposes. There shall be no access except to Settlors and their immediate families for camping, snowmobiling, motorcycling or other recreational vehicle use at any time. In negotiating and drafting the lease with Jerry J. Thomas, the Trustee shall consult with each Settlor and shall incorporate into such lease such terms and conditions as may be necessary to protect the rights of all parties. The rights to enter and use the property described in this paragraph shall be personal to the Settlors and their immediate families and limited number of guests.

Jay's daughters, LaRae Thomas and Carol Moen, were named co-trustees of the trust.

[¶ 6] Although it was originally contemplated Rathert would draft a written lease between Jerry and the trust, one of the co-trustees advised the office staff at Rathert's firm that the family would prepare their own lease with Jerry. LaRae Thomas subsequently confirmed this by delivering to Rathert's office a handwritten note stating: "It is Carol's and my intention to draw up our own lease agreement following terms stated w/in the Will." In compliance with these instructions Rathert did not draft a written lease, and no written agreement between Jerry and the trust was ever executed. LaRae Thomas, Carol Moen, and Donna Sneva testified that Jerry told the family he did not want to be bound to a seven-year lease, but preferred to continue renting the property on an oral year-to-year lease. They testified it was at Jerry's request that no written seven-year lease was executed, and the family agreed to an oral year-to-year lease. In late 1996 Jerry tendered rent for 1997 to the trustees.

[¶ 7] Jerry died in a ranching accident on May 12, 1997. Laurie continued in possession of the property, and discussed with the trustees her desire to rent some of the property. In the fall of 1997 the

---

1. Donna Sneva testified the other option under Article VII of the will, sale at public auction, was never considered.

trustees informed Laurie they would not lease the land to her in 1998. In December 1997 Laurie tendered a check for rent for 1998 to the trustees. They returned the check, notifying her in an accompanying letter that she did not have a valid lease for 1998.

[¶ 8] When Laurie remained in possession, the trustees brought this action against Laurie, Kisten, and Tessa (hereafter collectively "Laurie") to quiet title to the property, to recover possession, and seeking damages for the value of use and possession of the property after December 31, 1997. Laurie answered and counterclaimed, alleging the seven-year lease and option to purchase under the will was in effect and survived Jerry's death. Laurie also alleged fraud and breach of fiduciary duty by the trustees.[2]

[¶ 9] Following a bench trial, the trial court found Jerry had a year-to-year lease which terminated at the end of 1997. The court quieted title in favor of the trust, ordered possession of the land be turned over to the trustees, and awarded damages of $19,000 for use and occupation of the property. The court also dismissed the counterclaim. Laurie appealed from the judgment.

## II

[¶ 10] Laurie argues the trial court erred in allowing Donna Sneva, LaRae Thomas, and Carol Moen to testify that Jerry stated to them and other family members he did not want to be bound to a seven-year lease and that, at his request, they agreed to an oral year-to-year lease. Laurie asserts this testimony was hearsay and should not have been admitted.

[¶ 11] Rule 801(c), N.D.R.Ev., defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." If an out-of-court statement is not offered to prove its truth, it is not hearsay. *Ehrlich v. Backes*, 477 N.W.2d 211, 214 (N.D.1991); *State v. Welch*, 426 N.W.2d 550, 555 (N.D.1988). A statement offered to prove it was made is not hearsay. *Ehrlich*, at 214; *Welch*, at 555.

[¶ 12] We have held that statements offered to prove an oral contract existed are not hearsay, because they are not offered to prove the truth of the matter asserted. *See Towne v. Dinius*, 1997 ND 125, ¶ 13, 565 N.W.2d 762; *In re Estate of Starcher*, 447 N.W.2d 293, 297 (N.D.1989); *In re Estate of Raketti*, 340 N.W.2d 894, 899–901 (N.D.1983). Statements about the terms of, or assent to, an oral contract fall within the category of non-hearsay designated as "verbal acts" or "verbal conduct." *Towne*, at ¶ 13; *Raketti*, at 899. The utterance of the words is, in itself, an operative fact which gives rise to legal consequences. *Towne*, at ¶ 13; *Raketti*, at 899. Because it is the outward manifestations of assent which govern, not the parties' secret intentions, it is the mere fact of utterance which is relevant in determining whether there was an oral agreement. *Raketti*, at 900. It makes no difference whether Jerry was being truthful when he said he did not want to be bound to a seven-year lease and agreed to an oral year-to-year lease, because it is his outward manifestations which determine whether a contract existed. *See Raketti*, at 900.

[¶ 13] The underlying rationale for the rule is explained in *Raketti*, 340 N.W.2d at

---

2. Laurie also filed a third-party complaint against Rathert and his law firm for legal malpractice. The trial court dismissed the third-party claim by summary judgment, and Laurie filed a separate appeal from that judgment.

900 (quoting *Creaghe v. Iowa Home Mut. Cas. Co.*, 323 F.2d 981, 984 (10th Cir. 1963)):

> "The hearsay rule does not exclude *relevant* testimony as to what the contracting parties said with respect to the making or the terms of an oral agreement. The presence or absence of such words and statements of themselves are part of the issues in the case. This use of such testimony does not require a reliance by the jury or the judge upon the competency of the person who originally made the statements for the truth of their content. Neither the truth of the statements nor their accuracy are then involved. In the case at bar we are not concerned with whether the insured was truthful or not when he told the agent he wanted the policy cancelled and that he did not need it any more. It is enough for the issues here presented to determine only whether or not he made such statements to the agent. The fact that these statements were made was testified to by the agent, and his competency and truthfulness as to this testimony was subject to testing through cross-examination by counsel for appellant, and this was done at considerable length."

[¶ 14] We conclude the trial court did not err in admitting testimony about Jerry's statements because the testimony did not constitute hearsay under N.D.R.Ev. 801(c).

### III

■ [¶ 15] Laurie argues Jerry and the trust had entered into a valid seven-year lease with an option to purchase as contemplated under the terms of Jay's will, and the lease and option survived Jerry's death. Laurie concedes there was no written lease agreement signed by the parties, but argues there was a valid oral agreement with partial performance.

■ [¶ 16] A long-term lease with an option to purchase would ordinarily require a signed written agreement. N.D.C.C. §§ 9–06–04(3), 47–10–01. However, partial performance which is consistent only with the existence of the alleged oral contract may be sufficient to satisfy the statute of frauds. *See* N.D.C.C. § 47–10–01; *Felco, Inc. v. Doug's North Hill Bottle Shop, Inc.*, 1998 ND 111, ¶ 16, 579 N.W.2d 576; *Johnson Farms v. McEnroe*, 1997 ND 179, ¶ 19, 568 N.W.2d 920. Laurie contends Jerry had orally exercised his option under Jay's will for a seven-year lease with an option to purchase, and the payment of rent for 1996 and 1997 constituted partial performance which satisfied the statute of frauds.

[¶ 17] Laurie's argument ignores the other evidence in the record and the trial court's findings of fact and conclusions of law. Donna Sneva, LaRae Thomas, and Carol Moen testified Jerry told the family members he did not want to be bound to a seven-year lease and requested an oral year-to-year lease instead. They testified Jerry expressed concerns about being able to make the payments if cattle prices went down, and he therefore "did not wish to be beholding [sic] to all of [the other family members] and he did not want a written lease." The trial court found Jerry had expressly rejected his right to a written seven-year lease under Jay's will at a family meeting in late 1996:

> At this meeting, they discussed the need for a written lease of the land Jerry was renting. Jerry indicated he did not want to be bound by a written lease in case he could not make the payments.

The trial court ultimately determined "Jerry and the trust entered into a one-year lease, commencing January 1, 1997 and

terminated December 31, 1997, the end of the one year term."

■ [¶ 18] Even if Jerry originally expressed a desire to exercise his option for a seven-year lease under Jay's will, the parties could subsequently agree to a different lease arrangement. Parties to a contract, including a lease, may by mutual consent terminate, alter, or amend their agreement. *See* N.D.C.C. §§ 9–09–06, 9–09–07, 47–16–14(2); *Mitchell v. Barnes*, 354 N.W.2d 680, 682 (N.D.1984); *Sanden v. Hanson*, 201 N.W.2d 404, 409 (N.D. 1972); *First Nat'l Bank v. O'Callaghan*, 143 N.W.2d 104, 106 (N.D.1966); *Reitman v. Miller*, 78 N.D. 1003, 1008–09, 54 N.W.2d 477, 480 (1952); *Enderlien v. Kulaas*, 25 N.D. 385, 391, 141 N.W. 511, 513–14 (1913) (On Petition for Rehearing). Section 47–16–14(2), N.D.C.C., provides that a lease of real property may be terminated by "the mutual consent of the parties." Therefore, even if Jerry at one time had a valid seven-year lease, that lease would have been terminated when Jerry expressed that he did not want to be bound by a long-term lease and the parties agreed to an oral year-to-year lease.

■ [¶ 19] A trial court's findings of fact will not be reversed on appeal unless they are clearly erroneous. *Tishmack v. Tishmack*, 2000 ND 103, ¶ 7, 611 N.W.2d 204. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has been made. *Id.* On appeal, the trial court's findings of fact are presumed to be correct, and the complaining party bears the burden of demonstrating a finding is clearly erroneous. *State ex rel. Heitkamp v. Family Life Services, Inc.*, 2000 ND 166, ¶ 19, 616 N.W.2d 826.

■ [¶ 20] In a bench trial, the trial court is "the determiner of credibility issues and we do not second-guess the trial court on its credibility determinations." *Id.* at ¶ 26. We do not reweigh evidence or reassess credibility, nor do we reexamine findings of fact made upon conflicting testimony. *Tishmack*, 2000 ND 103, ¶ 7, 611 N.W.2d 204; *Wachter v. Gratech Co.*, 2000 ND 62, ¶ 17, 608 N.W.2d 279. We give due regard to the trial court's opportunity to assess the credibility of the witnesses, and the court's choice between two permissible views of the evidence is not clearly erroneous. *Tishmack*, at ¶ 7; *Wachter*, at ¶ 17.

[¶ 21] The trial court's findings of fact are amply supported by the record and are not clearly erroneous. Accordingly, the trial court did not err in concluding Jerry and the trust had a one-year lease which expired on December 31, 1997.[3]

## IV

[¶ 22] We have reviewed the remaining issues raised by Laurie on appeal and find them to be without merit. The judgment is affirmed.

[¶ 23] VANDE WALLE, C.J., and MARING, KAPSNER,and SANDSTROM, JJ., concur.

---

**3.** Laurie has not argued any independent basis for an option to purchase separate from the seven-year lease and option under Jay's will. Rather, she has forcefully argued any option is inseparable from the seven-year lease. Nor did the trial court make findings regarding any independent basis for the option. We therefore do not address any independent basis for a separate option to purchase.