Reynold **DITTMER** and Lenora Dittmer, Plaintiffs, Appellees and Cross-Appellants,

v.

Jorgen **NOKLEBERG**, Defendant, Appellant and Cross-Appellee.

**Civ. No. 8918.**

Supreme Court of North Dakota.

June 4, 1974.

Rehearing Denied June 27, 1974.

Conmy, Feste, DeMars & Bossart, Fargo, for the plaintiffs, appellees and cross-appellants.

Wegner, Fraase & Cook, Fargo, for the defendant, appellant, and cross-appellee.

TEIGEN, Judge.

Both the plaintiffs and the defendant have appealed from a judgment of the trial court.

In their complaint the plaintiffs (Dittmers) seek to recover damages in the amount of $24,560 from the defendant (Nokleberg) because of Nokleberg's breach of contract in the construction of a home on the Dittmers' farm. It is the contention of the Dittmers that Nokleberg failed to substantially perform the contract, and that the measure of damages is the difference between the value of the house as finished by Nokleberg and what the value of the house would have been if it had been finished according to the contract.

Nokleberg has counterclaimed for a recovery of the amount due on the contract, by foreclosure of his mechanic's lien, and for alleged extras, for a total of $6,252.

The case was tried to the court, and the court determined that the Dittmers were responsible for some of the defects but that Nokleberg was also responsible for a number of defects, and that Nokleberg had not substantially performed his contract. It allowed the Dittmers judgment against Nokleberg in the amount of $4,077.38, and denied Nokleberg's counterclaim.

It appears that the Dittmers and Nokleberg entered into a verbal contract in March 1970, whereby Nokleberg was em-

ployed by the Dittmers to furnish labor for the construction of a dwelling on their farm at an agreed consideration of $8,900. Of this sum $7,300 was allocated for labor in building the house and $1,600 for labor in constructing the basement and garage. Under the arrangement the Dittmers were to buy all materials, and Nokleberg was to do the carpenter and cement work. The Dittmers reserved to themselves the letting of contracts to other persons for excavation of the basement, electrical wiring, plumbing, brick work, plastering, and the installation of heating. The Dittmers planned to do the painting themselves.

The house was nearly completed when the parties terminated their relationship because of differences that had arisen during the construction period. The unfinished work at the time of the termination of the contract was valued at $470. Thus it appears that Nokleberg's work was approximately 95% complete at the time of the termination of the contract on or about April 7, 1971.

During the process of the work the Dittmers paid Nokleberg the sum of $4,000. Nokleberg filed a mechanic's lien for the balance of his claim, based on the contract. In addition, he claims that he performed extras in the amount of $1,525. He seeks recovery for the amount due, less the value of the unfinished work.

The claims for damages by the Dittmers are numerous. They claim that there were defects in the construction of a good portion of the exterior walls of the dwelling which resulted in the masonite siding being wavy. This was caused by the use of crooked 2 x 4s and studs in the construction of the walls. They also claim that the hip roofs and roof valleys were irregular; that the soffits were negligently constructed, causing leakage of water from the roof into the interior of the building; that the front entry concrete slab pulled away from the house; that, through carelessness, cement had splattered on a portion of the exterior walls of the building and was permitted to harden; that there were numerous defects in the interior of the house, consisting of improper installation of windows; improper installation of sheetrock around the windows, leaving openings, and that some windows were "offsquare"; that miter cuts on inside trim did not fit; that the walls were out of plumb in some of the rooms; that the interior doorways and trim were uneven; that the sliding doors did not fit nor work; that cracks developed in the ceiling; that support posts in the basement were not properly installed; that the woodwork in the bathroom was mismatched as to grain; that the kitchen cabinets were improperly constructed and installed; and that the cement in the basement floor was developing holes and cavities.

Nokleberg contends that, pursuant to the oral contract, the Dittmers were responsible for furnishing the materials; that during the construction period the Dittmers assumed the role of general contractor, interfered with the regular process of work by changing the plans of the house several times during the construction period, interfered with the work by doing some of the work themselves, and delayed construction; that during the delay period, there were several heavy rains before the house was closed in; and that instructions were given to change the roof of the house from a gable to a hip roof. It appears that a number of differences arose between the parties during the construction period, finally resulting in the termination of the relationship.

The evidence is contradictory in a number of respects, although both parties agree that the Dittmers were responsible for purchasing the materials. The Dittmers contend that Nokleberg had the responsibility of approving the materials and chose the lumber company from which the materials were to be purchased. The Dittmers testified that their agreement with the lumber company was that the lumber was to be 80% of construction quality and 20% of standard grade, whereas the lumber furnished was only 50% of construction quali-

ty. It appears that this caused a delay in the work of about three weeks. During this time the dwelling was only partially constructed and had not been closed in against the weather, and that during this period it rained. Nokleberg contends that he attempted to cull out the defective materials, and that he was not responsible for the quality of the materials.

The trial court, having heard the testimony and observed the witnesses as they testified, determined that Nokleberg must be held responsible for the lack of good workmanship and that the Dittmers must be held responsible for the defects in materials. It also determined that the defects or omissions which were not remediable without tearing down that portion of the building which had incorporated in it the wavy walls and other defects caused by poor materials were the fault of the Dittmers, and that the remaining defects were remediable or repairable. Although the trial court found that the defects in workmanship were substantial, that reference in its findings was limited to the interior of the house. The record establishes that subsequent to the termination of the contract between the parties the Dittmers engaged other workmen to repair or remedy these defects, as well as to complete some of the work which remained unfinished.

In its memorandum decision the trial court found that the necessary repairs had been made at a cost to the Dittmers of $3,557.38, plus repairs yet to be made on the basement floor estimated at $50, and allowed damages for uncompleted work in the amount of $470, for a total of $4,077.38 as damages allowable to the Dittmers against Nokleberg. It denied Nokleberg's claim for the balance of the contract and for the claimed extras on the basis that there had not been substantial performance.

In its findings of fact the trial court found that the Dittmers had agreed to and did purchase the materials, including the studs; that much of the material purchased was defective and that, from all surrounding circumstances, the Dittmers assumed the responsibility for the purchase and quality of the materials and Nokleberg made the best of the situation in the performance of the labor; that if any fault lay in the construction, stemming from and caused by the studs, the fault was the Dittmers. However, as to the interior of the building, the trial court found that because of poor workmanship the Dittmers were entitled to recover costs of repair in the amount of $3,607.38, plus the estimated cost to complete the work in the amount of $470, for a total of $4,077.38.

Subsequent to the issuance of the trial court's memorandum decision and before the entry of its order for judgment, the Dittmers moved to amend their complaint and add, as a claim, their demand for recovery of the $4,000 paid to Nokleberg on the contract, on the ground that Nokleberg had not substantially performed the contract. The trial court denied the motion for the reason that the payment was a voluntary payment made by the Dittmers, and because the proposed amendment sought, in effect, a double recovery. The issue presented by the motion was not tried at the trial, either by express or implied consent of the parties, and the motion was not made until almost three months after the court had issued its memorandum opinion, which was almost eight months after the case had been tried.

As we previously stated, both parties have appealed. It is the contention of Nokleberg, on this appeal, that the trial court erred in denying him the balance of his contract, plus the extras; that the evidence does not sustain the trial court's finding in allowing the Dittmers' claim in the amount of $4,077.38; and that the evidence merely sustains a claim for damages in the amount of $1,987.32.

The Dittmers, in their appeal, argue that the court erred in not entering judgment in their favor in the amount of $24,560, by applying, as a measure of damages, the difference between the value of the house as constructed and what its value would

have been had it been built according to the contract; that, in any event, the court erred in denying the plaintiffs' motion to amend their complaint for a recovery of the payments made; and that the court erred in faulting the Dittmers for the defective materials used in the construction.

■ The rule established in this State is set forth in Syllabus 4 of Karlinski v. P. R. & H. Lumber & Construction Co., 68 N.D. 522, 281 N.W. 898 (1938), as follows:

"Where defects resulting in a breach of a building contract may be remedied without taking down and reconstructing a substantial portion of the building, the amount of damages which the owner may recover is the expense of making the work conform to the contract, but where such defects cannot be so remedied, the measure of damages is the difference between the value of the defective structure and what the value of the structure would have been if properly completed according to the contract."

■ We have also held that if the contractor fails substantially to perform he may not recover at all under his contract. Anderson v. Todd, 8 N.D. 158, 77 N.W. 599 (1898); Braseth v. State Bank, 12 N.D. 486, 98 N.W. 79 (1904).

Thus this court has long applied the rule of substantial performance.

In speaking of substantial performance, 13 Am.Jur.2d Building, Etc. Contracts, § 41, indicates that this is the majority rule. It states:

"The American courts are united in holding that a substantial performance of a building or construction contract will support a recovery either on the contract or, in some jurisdictions, on a quantum meruit basis.

"Three reasons are given for the rule that a substantial performance of a building contract will support recovery. The first is that the work on a building is such that even if rejected the owner of the land must receive the benefit of the contractor's labor and materials, which is not the case where a chattel is constructed, because the chattel may be returned; since the owner must receive the fruits of the builder's labor, it is deemed equitable to require the former to pay for what he gets. The second reason is that it is next to impossible for a builder to comply literally with all the minute specifications in a building contract. The third reason is that the parties are presumed to have impliedly agreed to do what is reasonable under all the circumstances with reference to the subject of performance."

As to what constitutes substantial performance, 13 Am.Jur.2d Building, Etc. Contracts, § 43, states:

"While it is difficult to state what the term 'substantial performance' or 'substantial compliance' as applied to building and construction contracts means, inasmuch as the term is a relative one and the extent of the nonperformance must be viewed in relation to the full performance promised, it may be stated generally that there is substantial performance of such a contract where all the essentials necessary to the full accomplishment of the purposes for which the thing contracted for has been constructed are performed with such an approximation to complete performance that the owner obtains substantially what is called for by the contract. Imperfections in the matters of detail which do not constitute a deviation from the general plan contemplated for the work, do not enter into the substance of the contract, and may be compensated in damages, do not prevent the performance from being regarded as substantial performance.

"In some decisions stress is laid upon the question whether the defects are remediable without reconstructing the building. It has been said that deviations from the general plan of so essential a character that they cannot be remedied without partially reconstructing the

building do not come within the rule of substantial performance, which would allow the contractor to make compensation for unsubstantial omissions; and that a building contract is not substantially performed where a considerable sum of money would be required to remedy incompleteness in matters of detail, some of which are structurally remediable and others not. On the other hand, it has been suggested that it is not necessary that the work should be completed in all material respects or that there should be no omissions of work which cannot be done by the owner except at great expense or with great risk to the building. There may be omissions which could not afterward be supplied exactly as called for by the contract without taking down the building to its foundations, and at the same time the omission may not affect the value of the building for use or otherwise, except so slightly as to be hardly appreciable. Notwithstanding such omission, there might be a substantial performance of the contract. Some courts have, however, declared that no one can be compelled to overlook departures from the contract which are susceptible to correction by the contractor, and that a contrary rule would take from an unscrupulous contractor the chief inducement to keep his promises. Moreover, in determining whether or not the contract has been substantially performed, controlling importance has in some decisions been given to the cost of remedying the omissions, defects, and deviations as compared to the contract price of the whole work.

"In the last analysis, the question as to whether there has been substantial performance is one of fact for the trier of fact, and it may be added that whether there is a substantial performance of a building contract is to be determined in reference to the entire contract and what is done or omitted under it, and not in reference to one specification."

The first issue raised by Nokleberg pertains to the question of substantial performance. It is his contention, on appeal, that he did substantially perform because approximately 95% of the work had been completed and that there remained unfinished work of an estimated value of $470 when the contract was terminated. However, it is clear that the trial court's determination that there had not been substantial performance of the work on the interior of the house goes to the quality of the work rather than the quantity. Following the termination of the contract, the Dittmers hired another contractor who corrected the defects in the interior of the house and also completed a part of the unfinished work. This work consisted of building false beams to cosmetically cover ceiling and wall cracks, refitting doors, caulking windows, correcting poorly fitted sheetrock around the windows, removing door and window trim and replacing the same with trim which had correct miter joints, correction of the foyer and basement stairs by repairing stair jacks, making changes in some of the closets and, also, completion of the stairway by the installation of treads, risers, dry wall sides and handrails. This contractor was paid on an hourly basis in the amount of $1,987.02 for his labor. Nokleberg does not deny this part of the claim. In addition, the kitchen cabinets installed by Nokleberg were found defective and the Dittmers caused them to be removed. They purchased new kitchen cabinets and had them installed at a cost of $1,570.06. There is substantial evidence to support the finding of the trial court that it was necessary to replace the kitchen cabinets. The original kitchen cabinets were a crude piece of work, the plywood doors had been badly mismatched, some of the doors had been improperly hinged, the formica covering on top of the work cabinets was loose, no backs had been placed in the cabinets, and they were generally unsatisfactory in several other respects. In addition, there is evidence that the cost of repair of the defective basement floor was estimated on

the square-foot basis at a given cost per square foot, which the court computed at $50.

The evidence also establishes that the cost of the additional work to complete the contract was $470. Most of this work involved the garage, with some work on the house. A portion of the uncompleted work was completed by the contractor hired by the Dittmers. This work consisted of the completion of the stairs, risers, treads and paneling at a cost of $50. Thus the balance of the unfinished work should be allowed in the amount of $420. This was an error in computation and should be corrected on this appeal.

The trial court also found, and we believe correctly so, that no evidence was introduced as to the value of the repairs to be made to the front entrance slab, to the splattering of concrete on a portion of the outside walls, or to remedy the cause of the leaking soffit. Although the contractor employed by the Dittmers to remedy these deficiencies testified in respect to them, there was no evidence introduced as to the cost. Therefore, there was a failure of proof of damages.

The evidence clearly sustains the findings of the trial court that the defects on the outside of the house, including the wavy walls, the concrete front entrance slab, the splattering of cement on a portion of the walls, and the defects in the soffits, causing leaking, were either the fault of the Dittmers or, as to those matters for which they were not at fault, no evidence was introduced as to the costs of remedying such defects. The evidence also sustains the trial court in its finding that defects in the interior of the house were due to poor workmanship, were remediable, and in fact had been remedied, or could be remedied, and that the cost of repair totals $3,607.38, plus $470, the value of the unfinished work, making total damages of $4,077.38. We find that the trial court included the sum of $470 for the uncompleted work, from which figure the trial court

had inadvertently failed to subtract $50 for the completion of the stairway, which work had been completed and was included in the labor figure of $3,607.38. It thus should have reduced damages for work uncompleted to $420, reducing the total amount found by the court as damages from $4,077.38 to $4,027.38.

The trial court found that Nokleberg was not responsible for the defects consisting of the wavy walls for the reason that these defects were caused by defective material for which the Dittmers were responsible and that Nokleberg, under the circumstances, made the best of the situation in the performance of the labor and was not responsible. In Murphy v. Kassis, 59 N.D. 35, 228 N.W. 449 (1930), in Syllabus 3 we held:

> "The builder is not responsible for defects arising from doing the work in the manner directed by the owner, or which are caused by acts of the owner during the progress of the work."

We adhere to this principle and sustain the trial court in its finding that Nokleberg should not be held responsible for these defects.

As to the remaining defects, it appears that they were remediable and have been remedied.

The question arises as to whether the trial court erred in finding that Nokleberg did not substantially perform his contract. There is no fixed formula by which it can be determined because the word "substantial", the meat of the doctrine, in this context, is a relative term. In Anderson v. Todd, 8 N.D. 158, 77 N.W. 599 (1898), we held in Syllabus 1:

> "To entitle a contractor to recover upon a building contract, which has not been fully complied with by him, under the doctrine of substantial performance, it must appear, not only that he endeavored to perform it in good faith, but also that he has done so, except as to unimportant omissions or deviations, which are the result of mistake or inadvertence, and

were not intentional, and which are susceptible of remedy, so that the other party will get substantially the building he contracted for."

We also held that the doctrine of substantial performance prevails and the contractor may recover the contract price, less the expense of repairing the defects or omissions, if there has been substantial performance. We followed *Anderson* in Braseth v. State Bank, 12 N.D. 486, 98 N.W. 79 (1904).

In both of the foregoing cases this court found that the facts did not bring the contractor within the rule as the evidence established that there had not been substantial performance.

In *Braseth* the court found a great many defects and deviations and concluded that, from the whole evidence, the building, as completed, was not that contracted for, that noncompliance with the specifications was general and compliance a rare exception, and that it was apparent that poor work pervaded the entire building. In *Anderson*, the court found that the deviations and omissions were neither slight, unintentional, innocent nor easily remedied, and that the building constructed was not as provided for in the contract.

In Odegaard v. Investors Oil, Inc., 118 N.W.2d 362 (N.D.1962), which was an action by a contractor against an oil well owner for a sum due for construction of a mound around an oil well which was located in a water reservoir, we held that the doctrine of substantial performance was applicable and cited, with approval, the statement contained in Williston on Contracts, Revised Edition, Vol. 3, § 805, at 2262, wherein it is said:

"Where the rule of substantial performance prevails it is essential that the plaintiff's default should not have been willful; and the defects must not be so serious as to deprive the property of its value for the intended use nor so pervade the whole work that a deduction in damages will not be fair compensation."

In City of Granville v. Kovash, Incorporated, 118 N.W.2d 354 (N.D.1962), which was an action by the city against the contractor for damages resulting from the contractor's failure to construct and install a city water and sewage system in accordance with the contract, we also approved the "substantial performance" rule, and held in Syllabus 4:

"In order that a building or construction contract shall be considered to be 'substantially performed,' it must appear not only that the contractor endeavored to perform the contract in good faith, but also that he has in fact done so, except as to unimportant omissions or deviations which are the result of mistake or inadvertence and which were not intentional."

Thus, obviously, the extent of the nonperformance must be viewed in relation to the full performance promise. Whether, in a given situation, there has been substantial performance is a question of fact and the findings of fact of a trial court trying a case without a jury are binding upon us unless clearly erroneous. Rule 52(a), N.D.R.Civ.P.

In In re Estate of Elmer, 210 N.W.2d 815, 820 (N.D.1973), we interpreted the term "clearly erroneous" as follows:

"A finding is 'clearly erroneous' only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. United States v. United States Gypsum Co., 333 U.S. 364, 68 S. Ct. 525, 92 L.Ed. 746 (1948). The mere fact that the appellate court might have viewed the facts differently, if we had been the initial trier of the case, does not entitle us to reverse the lower court. Nee v. Linwood Securities Co., 174 F.2d 434 (8th Cir. 1949); Wright & Miller, Federal Rules of Civil Procedure, Sec. 2585, p. 729 et seq."

See also, Stockmen's Insurance Agency, Inc. v. Guarantee Reserve Life Insurance Co., 217 N.W.2d 455 (N.D.1974), and Lawrence v. Lawrence, 217 N.W.2d 792 (N.D.1974). In the latter two cases the findings were set aside on the basis that they were made without adequate evidentiary support.

The record in this case does not sustain that Nokleberg's default was willful. There is no evidence that it was intentional or willful. Further, it is clear that the defects for which he is held responsible were not so serious as to deprive the property of its value for the intended use or to pervade the whole work so that a deduction in damages would not be fair compensation. The defects for which Nokleberg was responsible were remediable, and, in fact, were remedied. We conclude, therefore, that the trial court clearly erred in finding that there had not been substantial performance, and that it was error to deny Nokleberg's counterclaim.

However, substantial performance of a building contract does not absolve the building contractor from responding in damages for his omissions and derelictions. Karlinski v. P. R. & H. Lumber & Construction Co., *supra*. We therefore sustain the trial court's decision that Nokleberg must respond in damages for the defects for which he was responsible but, because we find that there has been substantial performance, we must consider Nokleberg's counterclaim.

In respect to the counterclaim, Nokleberg, in addition to the $4,900 due on the contract, made claim for $1,525 for extra work. However, he abandoned his claim as to $1,200 of such claimed extra work and introduced evidence in an attempt to support a claim totaling $325 for extra work and loss of time on a quantum meruit basis. However, except for the installation of additional cement forms in order to pour a cement wall across the west end of the basement to form a cistern, the remaining items claimed as extras are not allowable as they do not appear to have been made necessary because of material changes made in the contract at the request of the owners but rather arose as a result of differences of opinion between the Dittmers and Nokleberg in the construction of the house or the loss of time by Nokleberg and his crew because of disagreements or misunderstandings as to whether they should or should not work because of weather and mud conditions. The house was built from very sketchy blueprints, without complete specifications or material lists, and judgment had to be made from time to time during the progress of the work, which resulted in disagreements or misunderstandings, which were resolved and do not sustain a claim for extras. For these reasons we do not feel that Nokleberg has sustained the burden of proof to entitle him to recover for the claimed extras except for the work in the preparation of the forms into which to pour cement to form the cistern wall.

We determine that Nokelberg is entitled to a judgment on his counterclaim in the amount of $4,900, the balance due on the agreed contract price, plus $50 for the installation of the forms for the cistern wall, for a total of $4,950, against which the Dittmers are entitled to an offset for their damages in the amount of $4,027.38, leaving a balance due and owing by the Dittmers to Nokleberg in the amount of $922.62.

For the reasons aforesaid we find that the trial court did not err in denying the Dittmers' motion to amend their complaint and add as a claim to their demand the recovery of the $4,000 payment made to Nokleberg on the contract, and direct that the judgment of the trial court be reversed to allow Nokleberg's claim in the amount of $4,950 and to allow the Dittmers, as an offset thereto, damages in the amount of $4,027.38, for a net judgment in favor of Nokleberg against the Dittmers in the amount of $922.62, and without costs to either party.

ERICKSTAD, C. J., and PAULSON, KNUDSON, and VOGEL, JJ., concur.