2005 ND 218

**CURTIS CONSTRUCTION COMPANY, INC., Plaintiff and Appellee**

v.

**AMERICAN STEEL SPAN, INC., dba Mastercraft, and Wane Engkjer, Defendants and Appellants.**

No. 20050175.

Supreme Court of North Dakota.

Dec. 20, 2005.

Adam W. Hamm, Anderson & Bottrell, Fargo, N.D., for plaintiff and appellee.

Jeff A. Bredahl, Bredahl, Frisk & Grande, Fargo, N.D., for defendants and appellants.

SANDSTROM, Justice.

[¶1] American Steel Span, Inc., and Wane Engkjer appeal a district court judgment awarding Curtis Construction Company, Inc., $34,241.62 after a bench trial. The disputes arose over the concrete work on two projects in Fargo. The district court's findings are supported by the evidence, and we affirm.

I

[¶2] American Steel Span, Inc., does business as Mastercraft and sells steel buildings around the country. Wane Engkjer is American Steel's principal owner. Curtis Construction is a North Dakota contractor.

[¶3] The first disputed project involved concrete work that Curtis Construction agreed to do for Mastercraft at Reile's Transfer in Fargo. Russell Handegard, the president of Curtis Construction, testified that Mastercraft was concerned about its need to finish the Reile's Transfer project and that the site had drainage problems that needed to be solved. Mastercraft asked Curtis Construction to help it finish the project. Tolly Wangsness, Mastercraft's foreman, testified that Mastercraft contracted with Curtis Construction through its foreman, Kent Moritz, to remove some concrete that Mastercraft had poured and to lay new concrete for a flat, per-square-foot rate. In support, American Steel offered Exhibit 3 into evidence at trial, which American Steel refers to as a "work order." The document contains language that American Steel argues created a flat-rate contract. Exhibit 3, dated "10/10/02," lists the job as "Reile's Transfer" and states "Tear out & Replace concrete @ $4.50 ¢; Place 6″ concrete @ $3.00 Sq Ft per Tolly at Master craft Bldg. T.W. T.W. Tolly Wangness [sic]." The document was initialed by Wangsness. Handegard testified that Moritz did not have authority to contract for new projects on behalf of Curtis Construction and that the contract for the removal of old and pouring of new concrete was an oral contract for a time-and-materials price. The time-and-materials price was calculated by adding the cost of raw materials, plus labor, plus an eight percent allowance for overhead costs and an eight percent allowance for profit. The district court concluded that the contract was a time-and-materials contract and awarded Curtis Construction $19,345. Of this amount, $14,000 had been paid, so the remaining balance due was $5,345.

[¶4] The second project was for concrete work at Engkjer's home in the Rose Creek area of Fargo. Handegard and Engkjer orally agreed that Curtis Construction would lay two concrete driveways at Engkjer's home. According to Engkjer, the parties agreed on a flat, per-square-foot rate. Handegard testified the agreement was for a time-and-materials price. Engkjer also contends Curtis Construction did not substantially perform the Rose Creek contract, because Curtis Construction delayed in pouring when it did not have a concrete pump; did not install

joints to prevent cracking; did not finish the driveway to specifications by failing to insert decorative concrete diamonds into the driveway; and did not properly lay the sand sub-grade, which Engkjer claims has resulted in extensive heaving and cracking. Moritz testified that his observations of the cracking persuaded him that the driveway's useful life has been reduced by thirty to forty percent. The district court found that Engkjer acquiesced to the time-and-materials pricing. · The court also found that Engkjer had not established the diminished value of the driveway caused by the alleged failure to properly perform. It awarded Curtis Construction $26,674 in damages.

[¶ 5] On appeal, American Steel and Engkjer argue that the district court clearly erred by concluding the two agreements were not fixed-rate contracts and by not reducing the Rose Creek judgment, given Curtis Construction's alleged failure to substantially perform. Curtis Construction argues the district court's findings are correct.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal was timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2, 6, and N.D.C.C. § 27–02–04 and §§ 28–27–01 through 28–27–02.

## II

### A

[¶ 7] On the Reile's Transfer project, American Steel argues that Exhibit 3 constitutes the contract between the parties. Whether a writing is sufficient to constitute a contract is a question of law, fully reviewable by this Court. *Johnson v. Auran,* 214 N.W.2d 641, 652 (N.D.1974).

[¶ 8] The elements of a contract include parties capable of contracting, the consent of both parties, a lawful objective, and consideration. N.D.C.C. § 9–01–02. Section 9–06–02, N.D.C.C., provides that all contracts may be oral, except those required by statute to be in writing. Both contracts in dispute in this case may be oral and not violate the statute of frauds, because they were capable of being performed in one year. *See* N.D.C.C. § 9–06–04 (contracts incapable of being performed in one year, contracts assuming payment of the debt of another, real estate sales or leases for a year or more, and contracts lending or extending credit for $25,000 or more must be in writing).

[¶ 9] In *Auran,* this Court addressed whether a "written memorandum of an alleged oral contract not to be performed within a year from the making" was sufficient to satisfy the statute of frauds provided for in N.D.C.C. § 9–06–04. 214 N.W.2d at 650. The disputed matter was an employment agreement between a car dealership owner and the widow of the former dealership owner. *Id.* at 646. The widow and the dealership allegedly agreed orally that the dealership would employ the widow as a "goodwill representative" of the car dealership for $100 per month and the yearly use of a new car. *Id.* The agreement was outlined in a letter from the dealership to the widow. *Id.* This Court held that for a writing to be sufficient to constitute the complete contract, the writing "must contain all the essential or material conditions and terms of the contract." *Id.* at 649–50. The contract may be contained in several writings or documents as long as it contains four details: (1) "Who the contracting parties are"; (2) "The identity of the subject matter involved"; (3) "The consideration"; and (4) "The terms and conditions upon which the contract was entered into." *Id.* at 651 (citing *Hoth v. Kahler,* 74 N.W.2d 440, 441 (N.D.1956)). Even though the

agreement between Curtis Construction and American Steel is not a contract that must be in writing, the same factors may be considered in deciding whether Exhibit 3 sufficiently explains the agreement. *See Stout v. Fisher Indus., Inc.*, 1999 ND 218, ¶ 14, 603 N.W.2d 52 (because the memorandum in question clearly showed that the parties planned to negotiate some employment terms later, it was not a complete contract).

[¶ 10] Exhibit 3 in this case is labeled as a "Daily Log." Curtis Construction's president, Handegard, testified the document is field notes regarding Reile's Transfer. The parties dispute whether the form is regularly used by Curtis Construction in its business. The writing on Exhibit 3 lists the job as "Reile's Transfer" and states "Tear out & Replace concrete @ $4.50 ¢; Place 6″ concrete @ $3.00 Sq Ft per Tolly at Master craft Bldg. T.W. T.W. Tolly Wangness [sic]." Handegard testified that the notes must have been written by Moritz or Wangsness. He also testified that the alleged per-square-foot pricing was communicated to him by Moritz, not from him to Moritz, and that he never approved a flat-rate price.

[¶ 11] Applying the *Auran* elements to Exhibit 3 demonstrates that it fails as a complete contract between the parties because it does not include both parties and all the essential or material terms and conditions of the agreement. Exhibit 3 discloses only Mastercraft as a party to the agreement through Wangsness's name and initials. The document does not disclose Curtis Construction as a party. It is not signed by any representative of Curtis Construction. According to Handegard, the form was not created by Curtis Construction and is only sometimes used on its construction projects. Therefore, Exhibit 3 does not disclose the parties to the agreement. Furthermore, Exhibit 3 does not disclose the complete terms and conditions under which the contract was entered into. Handegard testified that the document is very brief, describing only a small aspect of the job, and does not describe the work being done at the site. The document does not disclose the total square footage involved in the project or the amount of supplies needed. It does not discuss any specifications for any aspect of the project, nor does it discuss a deadline for the project. Exhibit 3 is too incomplete to constitute a full written contract between the parties. Therefore, it is merely extrinsic evidence that the district court may consider when deciding what the terms of the oral contract were. Exhibit 3 cannot be a contract as a matter of law.

### B

[¶ 12] That Curtis Construction and American Steel had at least an oral contract regarding the Reile's Transfer project is not disputed. The only disputed term is the pricing. American Steel argues the oral agreement was for a flat-rate, per-square-foot price, evidenced by Exhibit 3. Curtis Construction argues that the oral agreement was for a time-and-materials price.

[¶ 13] For disputes involving oral contracts, the trier of fact decides the terms of the contract. *Smith Enters., Inc. v. In–Touch Phone Cards, Inc.*, 2004 ND 169, ¶ 13, 685 N.W.2d 741 (citing *Tallackson Potato Co., Inc. v. MTK Potato Co.*, 278 N.W.2d 417, 422 (N.D.1979)). The findings of the district court will not be reversed unless they are clearly erroneous. *Id.*; N.D.R.Civ.P. 52(a). "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all the evidence, we are left with a definite and firm conviction a mistake has

been made." *Moen v. Thomas,* 2001 ND 95, ¶ 19, 627 N.W.2d 146. "On appeal, the trial court's findings of fact are presumed to be correct, and the complaining party bears the burden of demonstrating a finding is clearly erroneous." *Id.* At a bench trial, the trial judge weighs credibility of the evidence. *Id.* at ¶ 20. "We give due regard to the trial court's opportunity to assess the credibility of the witnesses, and the court's choice between two permissible views of the evidence is not clearly erroneous." *Id.*

[¶ 14] The district court concluded that the pricing term of the Reile's Transfer contract was on a time-and-materials basis. Handegard testified that he met with Wangsness and representatives from Reile's Transfer and that Mastercraft was having problems with the site and needed Curtis Construction's help. He testified there were no specifications to complete the project. Handegard testified that because there were no exact instructions, Curtis Construction and American Steel agreed to a time-and-materials contract, just as they had done on a prior project completed by Curtis Construction for American Steel. Handegard also testified that after the time-and-materials invoice for the Reile's Transfer project was sent to American Steel, American Steel paid $14,000 toward the balance. He testified that at the time no one from American Steel disputed the time-and-materials basis used to calculate the balance due. Handegard also testified that he never charged a per-square-foot rate but preferred to do pricing on either a bid or time-and-materials system, depending on the specifications and other information he was given. He testified that he does not recall having any discussion with Moritz on how the Reile's Transfer project would be charged. Handegard testified that he did not tell Moritz that Reile's Transfer was a cost-per-square-foot project and that Moritz should discuss the agreement with Wangsness.

[¶ 15] The district court weighed the credibility of the evidence. Although there was contrary testimony from American Steel's witnesses, the record supports the district court's conclusion of a time-and-materials price, and its findings are not clearly erroneous. The district court's findings of fact, conclusions of law, and order regarding the Reile's Transfer project are affirmed.

## III

### A

[¶ 16] On the Rose Creek Project, Curtis Construction and Engkjer agree they had an oral contract regarding the concrete work at Engkjer's home. The only term in dispute is the pricing. Engkjer argues the oral agreement was for a flat-rate, per-square-foot contract. Curtis Construction argues that the oral agreement was for a time-and-materials price. The same standards of review that applied for the Reile's Transfer oral contract apply to this contract as well. *See* ¶ 13, *supra.*

[¶ 17] Handegard testified that when he talked to Engkjer, his employees had already begun work on the driveways. He testified that after he arrived at Engkjer's home, the two discussed whether Curtis Construction would pour two driveways for Engkjer's home. He also testified that little preparation had been done at the site and that pouring concrete would be difficult because of the lack of preparation. Handegard testified that he would not give Engkjer a per-square-foot price because of the poor condition the site was in. Finally, Handegard testified that at the end of his conversation with Engkjer, he told Engkjer that Curtis Construction would do the work for a time-and-materials price and

would be as economical as possible. Engkjer and Moritz disputed Handegard's testimony, testifying they believed the final agreement was for a flat-rate price. The district court concluded that Engkjer had acquiesced to the time-and-materials price by the end of the conversation. The district court weighs credibility of the witnesses, and this Court will not substitute its judgment. for the conclusions of the district court when there are two possible conclusions to be drawn from the evidence. *Moen*, 2001 ND 95, ¶ 20, 627 N.W.2d 146. The district court's decision between two permissible views of the evidence is not clearly erroneous. *Id.* The record, through Handegard's testimony, supports the district court's finding that the Rose Creek project was done on a time-and-materials basis. We affirm the district court's finding that the contract was a time-and-materials contract.

## B

[¶ 18] Finally, Engkjer argues that the district court erred by not reducing the balance due to Curtis Construction for the diminution in value of the driveways because Curtis Construction failed to substantially perform. Whether a party to a contract has substantially performed and what amount of damages a party has incurred are questions of fact, and the district court will not be reversed unless its findings of fact are clearly erroneous. *Wachter v. Gratech Co., Ltd.*, 2000 ND 62, ¶ 17, 608 N.W.2d 279.

[¶ 19] The doctrine of substantial performance allows a contractor to recover on a contract even when it has not fully complied with the contract, as long as it has performed the contract in good faith and has mostly performed its responsibilities under the contract, " 'except as to unimportant omissions or deviations, which are the result of mistake or inadvertence,

and were not intentional, and which are susceptible of remedy, so that the other party will get substantially the building he contracted for.' " *Dittmer v. Nokleberg*, 219 .N.W.2d 201, 208–09 (N.D.1974) (quoting *Anderson v. Todd*, 8 N.D. 158, 158, 77 N.W. 599, 599 (1898)). The contractor's default must not be willful, and the defects in its work must " 'not be so serious as to deprive the property of its value for the intended use nor so pervade the whole work that a deduction in damages will not be fair compensation.' " *Id.* at 209 (quoting 3 Samuel Williston & George J. Thompson, *A Treatise on the Law of Contracts* § 805 (rev. ed.1937)). If a contractor has failed to substantially perform, it cannot recover an amount due under the contract. *Merrill Iron & Steel, Inc. v. Minn–Dak Seeds, Ltd.*, 334 N.W.2d 652, 657 (N.D.1983) (citing *Dittmer*, 219 N.W.2d at 206). A contractor has not substantially performed when the "defects are intentional, willful, or so serious as to deprive the property of its value or intended use." *Id.* (citing *Dittmer*, 219 N.W.2d at 209).

[¶ 20] The remedy. allowed when a contractor has substantially but not fully performed is an adjustment of the amount the property owner is required to pay the contractor to allow for the defects. *Id.* at 657. Generally, if the defects can be repaired without reconstructing a substantial portion of the project, the contractor can recover the contract price less the expense required to repair the defects. *Storebo v. Foss*, 325 N.W.2d 223, 225 (N.D. 1982). When the defects cannot be remedied without substantial reconstruction, however, the remedy is the value of a properly constructed project less the value of the project as actually constructed. *Id.* (quoting *Dittmer*, 219 N.W.2d at 206).

[¶ 21] For substantial performance remedies, as for general damages for

breach of contract, "[n]o damages can be recovered ... if they are not clearly ascertainable in both their nature and origin." N.D.C.C. § 32–03–09; *see also Biteler's Tower Service, Inc. v. Guderian*, 466 N.W.2d 141, 146 (N.D.1991) (an injured party in a breach of contract suit can recover only the amount that puts it in the same position as if the contract had been performed). Substantial performance remedies require that injured parties affirmatively prove the cost of repair or the loss of value to the property before they may receive an offset of the amount due to the contractor. *See Dittmer*, 219 N.W.2d at 208 (homeowner could not recover for poor concrete work when there was evidence only of what repairs were needed but no evidence of what the cost was). If the owner does not meet this burden, there is a failure of proof regarding damages. *Id.*

■ [¶ 22] The record supports the district court's finding that Engkjer did not provide sufficient evidence regarding the diminution of value of the driveway. Engkjer relies on Moritz's testimony that because of the alleged defects, the driveway is deficient. Moritz also testified that the life expectancy of the driveway had been diminished by possibly thirty or forty percent. Moritz's exact testimony regarding how much the life expectancy of the driveway has been reduced was, "I would think maybe 30, 40 percent maybe. The driveway is deficient already. If you're— that would be a round number. I'm basin' on what I looked at out in the driveway from what you seen before and what has happened to this day." There was no testimony from Moritz or any expert regarding the usual life expectancy of similar concrete driveways; the value of this driveway, other than the time-and-materials invoice prepared by Curtis Construction; or the cost of removing and replacing

the driveway. The district court could reasonably conclude that the testimony was too speculative to find diminution of value. Therefore, the district court did not err when it refused to reduce the amount owed to Curtis Construction. We affirm the district court's findings of fact regarding the damages to which Curtis Construction is entitled.

IV

[¶ 23] The judgment of the district court is affirmed.

[¶ 24] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.