2012 ND 155

**Shawn KNUDSON, Individually, and as a Partner of Tri–K Farms, Plaintiff, Appellant and Cross–Appellee**

v.

**Randy KYLLO, Individually, and as a Partner of Tri–K Farms, Defendant, Appellee and Cross–Appellant.**

No. 20110282.

Supreme Court of North Dakota.

July 26, 2012.

Ronald H. McLean (argued) and Peter W. Zuger (appeared), Fargo, N.D., for plaintiff, appellant and cross-appellee.

Michael T. Andrews (argued), Michael L. Gust (on brief) and Lowell P. Bottrell (on brief), Fargo, N.D., for defendant, appellee and cross-appellant.

KAPSNER, Justice.

[¶ 1] Shawn Knudson, individually and as a partner of Tri–K Farms, appeals and Randy Kyllo, individually and as a partner of Tri–K Farms, cross-appeals from a judgment ordering Knudson to pay Kyllo

$24,703.97 after a bench trial in an action involving the operation and dissolution of their farming partnership, Tri–K Farms. We conclude the district court's findings of fact for the dissolution of the partnership are not clearly erroneous, but the court failed to make appropriate findings on Kyllo's claim for usurpation of a partnership opportunity. We affirm in part, reverse in part, and remand for further proceedings.

I

[¶ 2] Kyllo began farming with his stepfather, Michael Knudson, near Clifford in the late 1970s. Shawn Knudson, Michael Knudson's son and Kyllo's half brother, began farming with them in the 1980s. In 1992, Michael Knudson stopped farming, and in 1994, Kyllo and Shawn Knudson formed a general partnership, Tri–K Farms, to conduct their farming operation. Knudson and Kyllo did not execute a written partnership agreement, and they operated Tri–K Farms as an equal partnership, with each partner making equal contributions of land, equipment, and labor and splitting income and expenses equally. According to Knudson, they each set up a separate line of credit at a bank in Mayville to contribute their share of operating expenses and to purchase equipment for Tri–K Farms, but Knudson handled Tri–K Farms' financial affairs, including Farm Service Agency programs, cash rent leases, and the partnership's financial records. Knudson owned four quarters of land and Kyllo owned three quarters of land, including the homestead and a bin site. By the mid 1990s, they were farming about 4,000 acres of land they owned or leased. One of the parcels of land Tri–K Farms leased was the "Fougner" land, which Knudson separately purchased by contract for deed in May 2005, in part, with partnership funds.

[¶ 3] By 2004, Kyllo and Knudson had made improvements to the bin site on Kyllo's land. The bin site initially included several bins, and during the partnership, Tri–K Farms built additional bins on the site. On August 2, 2004, Knudson and Kyllo executed a land and equipment lease for the bin site, which stated they equally owned the bins and equipment, including grain drying and handling systems. The lease ran from July 1, 2000, through January 1, 2075, and required Knudson and Kyllo to share insurance expenses for the premises. The lease said Kyllo owned the premises and Kyllo and Knudson jointly owned the equipment in conjunction with their farming operation. The lease also provided that Kyllo and Knudson had access to the premises with a right of ingress and egress.

[¶ 4] According to Knudson, Kyllo had indicated he wanted to quit farming, and in March 2006, they met with an attorney about dissolving the partnership. An attorney prepared a written partnership dissolution agreement to dissolve the partnership and distribute the partnership assets, but neither Knudson nor Kyllo signed the agreement. The unsigned written dissolution agreement dissolved the partnership effective March 31, 2006; referred to attached exhibits A and B for distribution of listed partnership assets and liabilities and partnership machinery and equipment; authorized Kyllo to farm 1,800 acres of land during the 2006 farming season and required Kyllo to pay Knudson $92,235 for custom farming the 1,800 acres allocated to Kyllo during that season; allocated the parties' rights to farmland leased by Tri–K Farms for farming seasons after 2006; allowed Kyllo to dry his crop at the bin site; required Knudson to reimburse Kyllo for half the fuel purchased by the partnership for the 2006 farming season; and authorized Knudson to rent a shop on Kyllo's land and to pay liability insurance for the

farming operation. The written agreement did not include attached exhibits A and B, which purported to describe partnership assets, liabilities, machinery, and equipment. The document also said transfer of the land for the bin site and payment of taxes for the transfer of machinery and equipment was not presently agreed upon.

[¶ 5] According to Knudson, he farmed under the terms of the unsigned written partnership dissolution agreement during the 2006 farming season, and he had no contact with Kyllo until an August 31, 2006, email. Kyllo claimed that during that time he discovered Knudson had separately purchased the Fougner land and Kyllo did not agree to the written partnership dissolution agreement. In November 2006, Knudson executed a farm lease for the "Kievman" land. According to Kyllo, when he learned about the lease, he gave Knudson a check for half the rent for the Kievman land and Knudson cashed the check. Knudson claimed he was denied access to the bin site when Kyllo placed a truck at the entrance to the site. According to Kyllo, however, a truck was placed across a road at the bin site for one day to prevent Knudson from removing equipment from the site and not to prevent Knudson from using the site.

[¶ 6] In 2008, Knudson sued Kyllo, alleging Kyllo breached the unsigned written partnership dissolution agreement and asserting other claims against Kyllo for the operation of the partnership and for an accounting and dissolution of the partnership. Knudson claimed the parties agreed to dissolve the partnership on March 31, 2006, but did not sign the written dissolution agreement, and under the unsigned agreement, Knudson was entitled to $92,235 for custom farming Kyllo's allotted 1,800 acres during the 2006 farming season. Knudson also sought one-half of the partnership equity in equipment; compensation for expending more than an equal share of labor, machinery, and equipment for the partnership; compensation for Kyllo's breach of the land and equipment lease for the bin site; and an accounting and formal dissolution of the partnership. Kyllo answered, seeking an accounting and dissolution of the partnership. He also counterclaimed for damages for usurpation of a partnership opportunity relating to Knudson's purchase of the Fougner land during the partnership.

[¶ 7] The district court granted summary judgment dismissal of Knudson's claim for breach of the land and equipment lease for the bin site, concluding the 75–year lease was for agricultural land and was void under N.D.C.C. § 47–16–02. The court thereafter granted Knudson's motion to amend his complaint to assert a claim for unjust enrichment regarding improvements made to the bin site during the partnership. After a bench trial, the court resolved the parties' claims regarding the partnership operation, provided an accounting for partnership assets and liabilities, dissolved the partnership, and after offsets, ordered Knudson to pay Kyllo $24,703.97.

II

[¶ 8] The district court decided the issue about the validity of the land and equipment lease for the bin site in the context of summary judgment and decided the remaining issues after a bench trial. The court decided the dispositive issues on appeal, however, in the context of the bench trial.

[¶ 9] We review a district court's findings of fact in a bench trial under the clearly erroneous standard of N.D.R.Civ.P. 52(a). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence

exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction the district court made a mistake. *Hogan v. Hogan*, 2003 ND 105, ¶ 6, 665 N.W.2d 672. A district court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differently does not entitle us to reverse the district court. *Id.* On appeal, we do not reweigh conflicts in the evidence. *Center Mut. Ins. Co. v. Thompson*, 2000 ND 192, ¶ 20, 618 N.W.2d 505. We give due regard to the district court's opportunity to judge the credibility of the witnesses. N.D.R.Civ.P. 52(a)(6). A district court's findings of fact should be stated with sufficient specificity to enable a reviewing court to understand the factual basis for the court's decision. *In re Griffey*, 2002 ND 160, ¶ 8, 652 N.W.2d 351.

### III

[¶ 10] Knudson argues the district court clearly erred in deciding Kyllo did not tortiously interfere with Knudson's rights to the bin site and to the Kievman land. Knudson argues the court erred as a matter of law in deciding the land and equipment lease for the bin site was void under N.D.C.C. § 47–16–02 and he did not have a possessory interest in the bin site. He claims even if the lease was void, Kyllo forcibly ejected him from the bin site because the site consisted of partnership property. He also asserts Kyllo forcibly ejected him from the Kievman land.

[¶ 11] The district court granted Kyllo summary judgment on Knudson's claim for breach of the land and equipment lease for the bin site. The court ruled Knudson had no right to the bin site under the 75–year land and equipment lease, because the lease was for "agricultural land" for longer than ten years under N.D.C.C. § 47–16–02, which provides:

> No lease or grant of agricultural land reserving any rent or service of any kind for a longer period than ten years shall be valid. No lease or grant of any city lot reserving any rent or service of any kind for a longer period than ninety-nine years shall be valid.

We need not address the court's interpretation of "agricultural land" in N.D.C.C. § 47–16–02, because, assuming Knudson had a possessory interest in the bin site, we conclude there is evidence in this record to support the court's findings that Knudson was not forcibly ejected from the bin site.

[¶ 12] Section 32–03–29, N.D.C.C., authorizes damages for forcible ejectment from real property and provides that "[f]or forcibly ejecting or excluding a person from the possession of real property, the measure of damages is three times such a sum as would compensate for the detriment caused to the person by the act complained of." In *Livinggood v. Balsdon*, 2006 ND 215, ¶ 10, 722 N.W.2d 716 (citations omitted), this Court described requirements for a forcible ejectment claim:

> Forcible ejectment from real property does not require the actual application of physical force; rather, "[i]t is enough if it is present and threatened, and is justly to be feared." "[A] show of force and threats" accomplishing the same result as physical removal is enough. "It is not necessary for the claimant to wait until actual violence is resorted to." The standard requires only "that the plaintiff had reason to believe that he would be put out by the application of physical force if he did not obey...."

[¶ 13] The district court found Kyllo did not forcibly eject Knudson from the bin site or from the Kievman land:

[O]nce [Kyllo] found out that [Knudson] had rented the Kievman land on his own, he approached [Knudson], told him that he should be able to farm half of it, and gave [Knudson] a check for half of the lease payment. [Knudson] subsequently cashed the check. There is no evidence that [Kyllo] threatened any force that put [Knudson] in fear. Rather, this appears to be an arm's length business transaction. The Court finds that [Knudson] has failed to establish by a preponderance of the evidence that he was forcibly excluded from the Kievman land entitling him to damages

. . . .

Relying on N.D. Cent.Code § 32–03–29, [Knudson] alleges that his rights to the bin site were tort[i]ously interfered with by [Kyllo]. This allegation stems from an event in 2006 when [Kyllo] parked a semi truck across the roadway to the bin site. Implicit in N.D. Cent. Code § 32–03–29, is that one cannot be forcibly excluded from realty unless they had a right to be on the realty. [Knudson] had no lease rights to the bin site [under the court's earlier summary judgment ruling that the lease agreement concerning the bin site was invalid]. It is undisputed that [Kyllo] owned the land upon which the bins sat. Only some of the bins on the bin site were partnership property. The other bins belonged to [Kyllo].

The Court concludes that [Knudson] did not have a possessory interest in the bin site entitling him to make a claim for forcible exclusion from realty under N.D. Cent.Code § 32–03–29. Furthermore, the Court found credible Shane Kyllo and Randy [Kyllo's] testimony that the truck was placed across the road to prevent [Knudson] from removing equipment, not to prevent [Knudson] from using the bins. In fact, [Kyllo] testified that [Knudson] was free to use

the bins in 2006. This was also credible testimony. [Knudson] has failed to establish by a preponderance of the evidence that his rights to the bin site were tort[i]ously interfered with.

[¶ 14] The district court found Kyllo's evidence about the bin site credible, and under N.D.R.Civ.P. 52(a), we give due regard to the court's opportunity to judge the credibility of the witnesses. The court also found Knudson presented no evidence Kyllo threatened any force regarding the Kievman land and the parties engaged in an "arm's length business transaction." The court's choice between two permissible views of the evidence is not clearly erroneous, and we do not reweigh that evidence. We are not left with a definite and firm conviction the court made a mistake in finding Kyllo did not forcibly exclude Knudson from the bin site or from the Kievman land. We conclude the court's findings are not clearly erroneous.

## IV

[¶ 15] Knudson argues the district court clearly erred in deciding the unsigned written partnership dissolution agreement was not a valid contract. He asserts the unsigned agreement can be used as extrinsic evidence to prove the terms of an oral agreement. He further contends his performance under the unsigned agreement establishes a contract. He claims he was entitled to damages for Kyllo's breach of that agreement.

[¶ 16] "Whether a writing is sufficient to constitute a contract is a question of law, fully reviewable by this Court." *Curtis Constr. Co., Inc. v. American Steel Span, Inc.*, 2005 ND 218, ¶ 7, 707 N.W.2d 68. The requirements for a contract include parties capable of contracting, consent of the parties, a lawful objective, and sufficient cause or consideration.

N.D.C.C. § 9–01–02. All contracts may be oral, except those contracts specifically required by statute to be in writing. N.D.C.C. § 9–06–02. Under N.D.C.C. § 9–06–04(1), an agreement that by its terms is not to be performed within a year from the making is invalid unless some part is in writing and subscribed by the party to be charged. *See Bergquist–Walker Real Estate, Inc. v. William Clairmont, Inc.*, 333 N.W.2d 414, 418 (N.D.1983) ("contract must be impossible of performance within one year if it is to be proscribed by the statute" of frauds). The unsigned dissolution agreement explicitly described the procedure for allocating the partnership's leased farmland for "each year" after the purported effective date of the agreement on March 31, 2006. Under those terms, the agreement could not be performed within one year and required a writing subscribed by the party to be charged.

[¶ 17] Knudson nevertheless argues the unsigned document can be used as extrinsic evidence to prove the terms of an oral agreement and his performance under the unsigned document establishes a contract.

[¶ 18] The district court found Knudson failed to establish by a preponderance of the evidence the unsigned agreement, which did not contain referenced attachments, was a valid written contract. Part performance consistent only with the existence of an oral agreement may remove the agreement from the statute of frauds. *Felco, Inc. v. Doug's North Hill Bottle Shop, Inc.*, 1998 ND 111, ¶ 16, 579 N.W.2d 576. Here, the court rejected Knudson's claim that he partially performed under the dissolution agreement by custom farming Kyllo's allotted land for the 2006 farming season under the terms of the unsigned document. The court found Knudson used partnership equipment and fuel to farm the land in 2006 and Kyllo's son helped cultivate and seed the land in the spring of 2006. The court decided Knudson's testimony that he performed the custom farming on Kyllo's allotted land in 2006 under the terms of the unsigned document was not credible. The court also found credible Kyllo's testimony there was not an agreement for dissolution of the partnership. We give due regard to the district court's opportunity to judge the credibility of the witnesses, and we do not reweigh conflicts in the evidence. There is evidence in this record to support the court's findings, and we are not left with a definite and firm conviction the court made a mistake. We conclude the court's findings about the unsigned partnership dissolution agreement are not clearly erroneous.

V

[¶ 19] Knudson argues that in dissolving the partnership and accounting for the partnership property, the district court clearly erred in finding the value of several items of partnership property, including a $208,000 valuation for the bin site and the values for three tractors, a row crop cultivator, an auger, a rod weeder, a rotary ditcher, a grain dryer, and water tanks. Kyllo responds the court erred in valuing the bin site at $208,000 and claims the value of the partnership's interest in the bin site was much lower. He argues he should be required to pay only $36,400 as the partnership share for the bin site instead of $104,000.

[¶ 20] The district court's findings essentially accepted Knudson's evidence for a value of $300,000 for the bin site, but apportioned that value because Kyllo separately owned the land for the bin site and some bins on the land and the additional bins on the land were partnership property. The court's apportionment was based

on bushel capacity for the partnership's bins. We understand the basis for the court's valuation of the bin site, and we are not left with a definite and firm conviction the court made a mistake in valuing the partnership's interest in the bin site. We conclude the court's valuation of the bin site is not clearly erroneous.

[¶ 21] The district court also made findings about values for the other items of equipment. We reject Knudson's claim the court's use of trade-in values for some pieces of equipment is clearly erroneous. We have reviewed the evidence in this record, and we conclude there is evidence to support the court's findings. We decline Knudson's invitation to reweigh that evidence. We are not left with a definite and firm conviction the court made a mistake in valuing the partnership property, and we conclude the court's valuations for the bin site and the other equipment are not clearly erroneous.

## VI

[¶ 22] Knudson argues the district court erred in finding a bill owed to a third party, Mayport Farmers Co-op, was not a partnership bill. Knudson claims Kyllo was responsible for half the partnership bill with Mayport Farmers Co-op.

[¶ 23] The district court found Knudson failed to prove a $71,217 bill to Mayport Farmers Co-op was a partnership debt. Although Knudson testified the bill was a partnership debt, the district court was not required to accept Knudson's testimony. *See Estate of Clemetson,* 2012 ND 28, ¶ 19, 812 N.W.2d 388 (testimony may be uncontradicted, but not credible, and a trier of fact need not accept undisputed testimony). We are not left with a definite and firm conviction the court made a mistake about that bill, and we conclude the court's finding is not clearly erroneous.

## VII

[¶ 24] Knudson argues the district court clearly erred in deciding some of Knudson's claimed personal income was partnership income. The district court found this claim involved a credibility determination, and we give due regard to the court's opportunity to judge the credibility of witnesses. We refuse Knudson's invitation to reweigh the court's credibility determination. We are not left with a definite and firm conviction the court made a mistake in finding Knudson's claimed personal income was partnership income, and we conclude the court's findings on that claim are not clearly erroneous.

## VIII

[¶ 25] In his cross appeal, Kyllo argues the district court erred in awarding him only $1,526.97 on his counterclaim for usurpation of a partnership opportunity, which involves Kyllo's claims about Knudson's individual purchase of the Fougner land in 2005. Kyllo claims the opportunity to purchase the Fougner land was a partnership opportunity and Knudson's separate purchase of the Fougner land in 2005 constituted a breach of Knudson's fiduciary duties to the partnership and an usurpation of a partnership opportunity. Kyllo claims Knudson holds the usurped partnership opportunity and profits as a constructive trustee for the partnership. Knudson responds he did not breach a fiduciary duty by purchasing the Fougner land for himself and the district court's findings about the Fougner land are not clearly erroneous. Knudson also claims purchasing farmland was not within the scope of the parties' partnership agreement and Kyllo has not established Knudson usurped a partnership opportunity.

[¶ 26] The district court decided Knudson had no intention for the Fougner

land to be partnership property when he purchased it. However, the court's findings indicate the court did not otherwise consider this issue in the context of a partner's fiduciary duties to another partner under N.D.C.C. § 45–16–04, which provides:

1. The only fiduciary duties a partner owes to the partnership and the other partners are the duty of loyalty and the duty of care set forth in subsections 2 and 3.

2. A partner's duty of loyalty to the partnership and the other partners is limited to the following:

   a. To account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity;

   b. To refrain from dealing with the partnership in the conduct or winding up of the partnership business as or on behalf of a party having an interest adverse to the partnership; and

   c. To refrain from competing with the partnership in the conduct of the partnership business before the dissolution of the partnership.

3. A partner's duty of care to the partnership and the other partners in the conduct and winding up of the partnership business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.

[¶ 27] In *Sandvick v. LaCrosse*, 2008 ND 77, ¶ 14, 747 N.W.2d 519, this Court explained the scope of a fiduciary duty depends on the language of the parties' agreement. In the context of applying a partner's fiduciary obligations under N.D.C.C. § 45–16–04(2) to joint adventurers, this Court said:

> "Joint adventurers, like copartners, owe to one another, while the enterprise continues, the duty of the finest loyalty." *Svihl v. Gress*, 216 N.W.2d 110, 115 (N.D.1974) (quoting *Meinhard v. Salmon* [249 N.Y. 458], 164 N.E. 545, 546 (N.Y.1928)); *see also* 2 Williams & Meyers, *Oil and Gas Law* § 437.1 (2007) ("Each party has the right to demand and expect from his associates full, fair, open, and honest disclosure of everything affecting the relationship. One party may not exclude his associates from an interest in properties which are the subject matter of the joint venture by purchasing it for his individual account, . . . if he does acquire such antagonistic interest he must account to the other participants in the joint venture therefore.").

*Sandvick*, at ¶ 16.

[¶ 28] The district court analyzed whether Knudson intended for the purchase of the Fougner land to be partnership property, but the court's findings did not analyze a partner's fiduciary duties to another partner in the context of a claim for usurpation of a partnership opportunity. Although Tri–K Farms may not have been in the business of purchasing farmland, Tri–K Farms was in the business of farming leased land and its partners' land and farming the Fougner land was within the scope of the partnership. The district court did not explicitly address whether purchase of the Fougner land constituted a partnership opportunity, and the court's findings do not specifically address Kyllo's claim for usurpation of a partnership opportunity. We therefore reverse the court's decision on Kyllo's claim for usur-

pation of a partnership opportunity, and we remand for consideration of that issue.

## IX

[¶ 29] We affirm in part, reverse in part, and remand for further proceedings.

[¶ 30]  GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.